THE PRESIDENT AND DIRECTORS OF THE BANK OF THE METROPOLIS, PLAINTIFF IN ERROR, *vs.* ERASTUS GUTTSCHLICK, DEFENDANT IN ERROR.

Action on an agreement in writing, by which Guttschlick had purchased a lot of ground in the city of Washington, from the Bank of the Metropolis, for which he had paid a part of the purchase money, and given a note for the residue. By the contract, the Bank of the Metropolis, through its president and cashier, was pledged to convey the lot in fee simple to Guttschlick, when the whole purchase money was paid. The declaration in each count averred the payment of the note, and the failure of the bank to convey. To the three special counts in the declaration, there was no conclusion; to the fourth count, for money had and received; there was a general conclusion. It was held by the Court, that whatever might have been the effect of the want of a conclusion to the three counts upon a special demurrer, the thirty-second section of the judiciary act of 1789, would cure the defect; if it be admitted to be one.

A corporation may be bound by contracts not executed under their common seal, and by the acts of its officers in the course of their official duties,—when, in a declaration, it is averred that a bank by its officers agreed to a certain contract, this averment imports every thing to make the contract binding.

An allegation that a party made, accepted, endorsed, or delivered a bill of exchange is sufficient, although the defendant did not do either of those acts himself; provided he authorized the doing of them.

The averment in a declaration set forth that the plaintiff had been turned out of possession of a lot of ground, but did not state that the eviction was by due course of law. The breach alleged in the count was, that the defendant had refused, on demand, to convey the lot. The Court held the averment of eviction to be mere surplusage.

The Bank of the Metropolis contracted to deliver a title in fee simple to Guttschlick, of a lot of ground, and at the term of the contract they held the lot, by virtue of a sale made under a deed of trust, at which sale they became the purchasers of the property. The same lot had, by a deed of trust executed by the same person, been previously conveyed to another person, to indemnify an endorser of his notes, and it was by the trustee, afterwards, and after the contract with Guttschlick, sold and purchased by another. Held, that at the time of the contract of the bank, they had not a fee simple in the lot which could be conveyed to Guttschlick.

In case of a deed of trust executed to secure a debt, unless in case of some extrinsic matter of equity, a Court of Equity never interferes to delay or prevent a sale according to the terms of the trust; and the only right of the grantor in the deed, is the right to any surplus which may remain of the money for which the property sold.

The action in this case was assumpsit against the bank on a contract under the seals of the president and cashier. Held, that the action was well brought; and it makes no difference in an action of assumpsit against a corporation whether the agent was appointed under the seal or not; or whether he puts his own seal to a contract which he makes in behalf of the corporation.

It is admissible for the party who sues on a contract, to make a title to a lot of ground in fee simple which he had purchased, to give in evidence an examination of the records of the office for the recording of deeds, by a witness who was searching into the title of the lot, and also a letter giving to the party who made the contract, a notice that the lot was about to be sold under a title superior to that under which he held. A deed from the vendor, informally executed, and which did not convey the title the vendor agreed to give, was also admissible in evidence, in an action against the vendor on the contract.

A paper executed by the president and cashier of a bank, purporting to convey a lot of ground held by the bank, is not the deed of the corporation.

The proceedings in an action against the endorser of a note, by the holder, which gave to a trustee, by the terms of the deed of trust, a right to sell property held for the indemnity of the endorser, were proper evidence in an action on a contract for the sale of the lot, from which the party who had purchased under another title had been evicted by a title

obtained under the deed of trust. No exceptions to the regularity of the proceedings offered in evidence can be taken, which should have been properly made in the original action by the party sued on the same.

Whether evidence is admissible or not, is a question for the Court to decide; but whether it is sufficient or not to support the issue, is a question for the jury. The only case in which the Court can make inferences from evidence, and pass upon its sufficiency, is on a demurrer to evidence.

When a trust is created for the benefit of a third party, though without his knowledge at the time, he may affirm the trust, and enforce its execution.

Where a deed of trust was executed to secure the payment of certain notes, and a judgment obtained on the notes, the judgment did not operate as an extinguishment of the right of the holders of the note to call for the execution of the trust; although the act of limitations might apply to the judgment.

ERROR to the Circuit Court of the United States for the county of Washington, in the District of Columbia.

This action was instituted by the defendant in error, against the plaintiff in error, on the 31st day of March, 1836. The declaration contained four counts.

1. That on the 9th of November, 1827, the plaintiff bought of defendant a certain lot of ground in the city of Washington, being lot 5, square 489, for the sum of eleven hundred and ninety-one dollars and twenty-five cents, and paid the sum of five hundred and ninety-one dollars and twenty-five cents, and gave his promissory note for the balance of the purchase money; that the defendant, in consideration thereof, agreed through the president and cashier, that it was pledged, when the note should be paid, to convey said lot to plaintiff, his heirs and assigns; that said note was paid at maturity, with the interest: yet the defendant has not conveyed said lot, but to do so has hitherto wholly refused, &c.

2. That whereas, the defendant, by John P. Van Ness, the president of said bank, and Alexander Kerr, the cashier, agents for that purpose, duly authorized by and acting for defendant, did, on the 9th November, 1827, bargain and sell to the plaintiff the said lot of ground, on the terms mentioned in the first count, and did thereupon put plaintiff in possession of said lot; and the plaintiff avers the authority of Van Ness and Kerr to make said agreement; that plaintiff paid the note, and received and continued in possession of the lot, and was obliged to pay, and did pay taxes thereon, from the 9th November, 1827, to 30th December, 1835, when he was turned out of possession by the Patriotic Bank: yet defendant, although often requested, has not conveyed the said lot in fee simple to the plaintiff, but hath hitherto wholly neglected and refused.

3. That whereas defendant, on the 9th November, 1827, by an agreement of that date, acknowledged to have received from the plaintiff the sum of five hundred and ninety-one dollars and twenty-five cents, and the promissory note of the plaintiff, payable six months after date, with interest, and in consideration thereof put the plaintiff in possession of said lot, and undertook and faithfully

[The Bank of the Metropolis *vs.* Guttschlick.]

promised the plaintiff, upon the payment of said note, with interest, to convey to plaintiff said lot in fee simple ; that the plaintiff did pay said note, with interest, whereby defendant became liable and bound to convey said lot in fee simple, by a good and indefeisible title, free from encumbrances; and being so liable, undertook and promised, &c.: yet plaintiff says that the defendant was not at the time when, &c., or at any other time after seized or possessed of said lot in fee simple, nor did then or at any other time, although often requested to convey, &c. And the plaintiff further avers, that being in possession of said lot, as aforesaid, he was compelled to pay and did pay the taxes and public dues, amounting to three hundred dollars, whereby, &c.

4. The fourth count was for money had and received, and concluded as follows, " Yet the said defendants, the said sums of money have not paid to the said plaintiff, nor have they paid any part thereof, but the same or any part thereof to pay to the said plaintiff, have hitherto wholly neglected and refused, to the damage of the said plaintiff three thousand dollars, and thereof," &c.

There was no conclusion to the three preceding counts in the declaration.

The jury, under the charge of the Court, found a general verdict for the plaintiff for eleven hundred and ninety-one dollars and twenty-five cents, with interest from November 9, 1827.

The counsel for the defendant took four exceptions to the charge of the Court.

The plaintiff in the Circun Court having given in evidence an account made out by the Bank of the Metropolis, against him, stating that he had bought a certain lot of ground described in the same, from the bank, for the sum of eleven hundred and ninety-one dollars and twenty-five cents, gives a credit for the sum of five hundred and ninety-one dollars and twenty-five cents as " cash received;" and the balance, six hundred dollars, to be due on the bond of the plaintiff, in the following terms, " Be it known, that on this 9th day of November, 1827, Ernest Guttschlick, has purchased of the Bank of the Metropolis, lot No. 5, in square No. 489, as above described, and as laid down on the plat of the city of Washington, for the sum of eleven hundred and ninety-one dollars and twenty-five cents, and that he hath paid on account of the same, the sum of five hundred and ninety-one dollars and twenty-five cents, leaving due the sum of six hundred dollars, for which he hath given his note to the said bank, payable in six months after date with interest from date, which sum of six hundred dollars, when paid, will be in full for the purchase money of said lot.

" The Bank of the Metropolis, through the president and cashier, is hereby pledged, when the above sum shall be paid, to convey the said lot, viz. lot 5, in square 489, in fee simple, to the said Ernest Guttschlick, his heirs or assigns, forever.

" In testimony whereof, the said president and cashier, by order of

the board of directors, have hereto set their hands and seals this ninth day of November, eighteen hundred and twenty-seven.

            "JOHN P. VAN NESS, [SEAL.]
                    " *President of the Bank of Metropolis.*
           "ALEXANDER KERR, *Cashier.* [SEAL.]

   "In presence of GEO. THOMAS."

With evidence that he, the plaintiff, had paid the sum of six hundred dollars to the bank: the defendants excepted to the admissibility and competency of the same, until some evidence should be given, showing the authority of the parties who executed the same to sign said paper.

The Court overruled the objection.

The defendant's second bill of exceptions stated, that the plaintiff proved that in December, 1835, witness, at the instance of the plaintiff, examined the records of deeds in Washington county, for the purpose of tracing the plaintiff's title to the lot in question, and, after such examination, wrote for the plaintiff his letter to the bank, dated 17th December, 1835; that when he wrote that letter, a deed, purporting to be executed by John P. Van Ness, president, &c., to the plaintiff, was before him, and is the deed referred to in said letter, having been handed to him by plaintiff. The said deed was duly recorded on the 13th of May, 1828, and appears to have been delivered in August, 1828. Statements were made by counsel, and the plaintiff offered to read in evidence said deed; which being objected to, the Court overruled the objection, and defendant excepted.

The third bill of exceptions stated, that the plaintiff, in order to maintain the issue on his part, offered in evidence the proceedings of the Circuit Court of the District of Columbia, for the county of Washington, in a certain suit brought by the Patriotic Bank against Samuel Lane, for the purpose of showing that Samuel Lane had been in fact sued upon the note for three thousand dollars, one of the notes mentioned in the deed from B. G. Orr, to Joseph Elgar, dated 21st of August, 1818; to the competency and admissibility of the same to prove the said fact, the defendant objected; but the Court overruled the objection, and permitted the same to go to the jury. To the admission of which testimony the defendant, by his counsel excepted. The deed from B. G. Orr, referred to in the exception, was a deed of trust, executed on the 21st day of August, 1818, and duly recorded, to Joseph Elgar, by which Orr conveyed to Elgar certain lots of ground in the city of Washington, in trust, that if Samuel Lane should be sued, or put to any cost, trouble, damage, or expense, by reason of his having endorsed certain notes drawn by B. G. Orr, negotiable at the Patriotic Bank, the trustee should sell and dispose of the property conveyed by the same, and out of the proceeds discharge the notes, or such as may have been substituted for them, and to indemnify the said Samuel Lane, &c.

The fourth bill of exceptions stated, that the plaintiff, to sustain the issue on his part, gave in evidence the articles of agreement

signed by John P. Van Ness, President of the Bank of the Metropolis, and Alexander Kerr, Cashier of the Bank, with the plaintiff, for the sale of the lot; and then, having proved that B. G. Orr was seized in fee of the premises mentioned in the agreement, gave in evidence the deed from Orr to Elgar, referred to in the third exception, and then gave in evidence a deed from B. G. Orr to Kerr, authorizing the sale of the lot, for the purpose of discharging certain notes, drawn by Orr, and discounted at the Bank of the Metropolis, and a deed made by Kerr to the Bank of the Metropolis, in pursuance of the trust, dated July 1st, 1825, under which deed the bank entered into possession of the lot; and then gave in evidence the proceedings in the Circuit Court, in the case of the Patriotic Bank against Samuel Lane, as stated in the third bill of exceptions, and proved by competent testimony, that B. G. Orr had died in 1823, and Samuel Lane, in the year 1822, both insolvent; and that in the year 1835, said Elgar, at the instance and request of said Patriotic Bank, advertised the property mentioned in said deed to him for sale, in manner following, and that pursuant to said advertisement, he did, on the 21st day of December 1835, enter on the premises and expose to sale, and did sell, said lot No. 5, in square No. 489, and the said Patriotic Bank, by its cashier, became the purchaser, and said Elgar executed to said bank a deed for the same, and that the nett proceeds of said sale of said lot, was carried on the books of the said Patriotic Bank to the credit of said B. G. Orr's note for three thousand dollars, mentioned in said deed from said Orr to Elgar, still leaving, as appears by the said books, a balance due on the said note; and then gave in evidence a letter addressed by said plaintiff to said defendant, and then proved by competent testimony, that the said lot was vacant, and unenclosed, and unimproved; and that after said sale and conveyance to said Patriotic Bank, the cashier of said bank went on to said premises, in company with the attorney of said bank, and then and there declared that he took possession of the same; and that in the year 1824, the said lot was assessed on the books of the corporation of Washington, as the property of said Orr; and that from the year 1825 to the year 1828, both inclusive, the same was assessed to said defendant, who paid the taxes thereon; and that from the year 1829 to the year 1835, the same was assessed to said plaintiff, who paid the taxes thereon, and continued in possession till the year 1835, and from that time, the same has been assessed to said Patriotic Bank; and further proved that said plaintiff was duly notified by the cashier of said Patriotic Bank, of his intention to take possession of said lot, in the manner and at the time of his said entry as aforesaid, that that said lot still remains and has constantly remained open, vacant, unimproved, and unenclosed; and further proved that said plaintiff had paid to said defendant the whole consideration money for which said lot was sold to him, and taken up at maturity as part of said purchase money, the note mentioned in the agreement aforesaid, signed by said Van Ness and Kerr; and that the said Orr and Kerr, during their lives, and

the said Elgar, the Bank of the Metropolis, and Patriotic Bank, were all in the city of Washington from 1818 till after 1835.

The defendant moved the Court to instruct the jury, that upon this evidence the plaintiff was not entitled to recover upon the first, or second, or third, or fourth counts in the declaration; which instructions the Court refused to give; to which refusal the defendants excepted.

The defendants presented this writ of error.

The case was argued by Mr. Coxe, for the plaintiffs in error, and by Messrs. Semmes and Bradley, for the defendant.

Mr. Coxe contended that the Circuit Court had erred in each and all the instructions given to the jury.

He argued that the proceedings under the deed from Orr to Elgar, under which the Patriotic Bank claimed title to the lot sold to the defendant in error, were irregular and void. Eighteen years had elapsed between the execution of the deed of trust by Orr to Elgar; and if the Patriotic Bank could come forward in 1835, to claim under a note given in 1819, they should have gone into a Court of Equity before they could call on the trustee to sell. The deed of trust gave only a naked power; and after the elapse of so many years, no sale could be made under it. He had exceeded his authority. Deeds of trust have the same effect as common law mortgages. In 1835, when Elgar undertook to execute the trust, there was no debt due to the Patriotic Bank. A Court of Equity, as well as a Court of Common Law, would have presumed its payment.

There is no evidence that Samuel Lane had been sued upon the notes, or had ever suffered damage, or been put to expense. The judgment of the Patriotic Bank on the notes was obtained in 1823, against the administrator of Lane.

By the law of Maryland, a judgment becomes inoperative after twelve years; and this judgment was therefore invalid in 1835. The statute of limitations had created a complete bar to all claims on the notes of Orr, or on the judgment. The Patriotic Bank had no rights under either the judgment or the notes.

The Bank of the Metropolis had therefore become entitled, completely and exclusively, under the deed to Alexander Kerr, to the lot; for if no proceedings could be had against Lane, how could the deed of trust from Orr to Elgar be put in force? No evidence could be introduced to show the right of Elgar. It was at an end from time.

The defendant in error did not show on the trial a right to recover against the Bank of the Metropolis. He has no right of action. He should have shown that he had tendered a proper deed to the bank, to be executed: but this is not shown, or averred. He should have proved that a power to sell the lot had been given by the bank to the president and cashier: but the Circuit Court did not require this.

The defendant in error was barred from sueing, by his holding the

deed for the lot, although it may have been defective; and by his holding possession under the deed, until he had demanded a better one from the Bank of the Metropolis.

All the counts in the declaration are defective but the fourth and last, as they have no conclusion; and the conclusion to the last count is inapplicable to the preceding three.

Messrs. Semmes and Bradley for the defendant in error.

It is extraordinary, that after the pleadings were made up in this case, a trial had, and the plaintiffs in error had taken four bills of exceptions, objections to the declaration should be first made in this Court. The party thus objecting is too late: he has wayed all right to take such exceptions. All defects in the declaration are cured by the verdict and by the statute of jeofails.

So if the defendant in the Circuit Court had an objection to the form of the action, he should have taken it by a plea. The contract is set out in the declaration. It is a contract for the sale of the lot by the officers of the bank; and it has been held that the accredited agents of the bank have a right to bind it by their contracts. Hatch vs. Barr, 1 Ohio Reports, 390.

It is certain that the Bank of the Metropolis made the contract set out in the record, and did not keep it with the defendant in error. At the time they assumed the right to sell the lot, the bank could not legally convey it; nor has a legal title to it been made at any time by the bank. There was an existing encumbrance on the lot which the bank did not remove, and which has, subsequently to the sale to the defendant in error, been enforced; and he is entirely divested of the property. He has paid the full consideration stated in the contract, and he now seeks to recover the same back from the bank. This is resisted, and this is the question in the case. On the part of the defendant in error every principle of equity and justice is in full force. The bank would exempt itself from its obligations upon legal and technical grounds. But no objections on such grounds to the recovery of the defendant in error will be found to exist. 20 Johns. Rep. 15. 20. , Sugden on Vendors, 6. Encumbrances on property are objections to a valid title. 11 Johns. Rep. 525. 2 Johns. Rep. 613. 12 Johns. Rep. 190. 8 Wheat. 338. 12 Wheat. 64.

The authority of the agents of the bank to sell may be inferred from the acts of the parties. The money of the defendant and his note were given to the bank for the property, and this property was acquired by the bank from one of its debtors for the payment of a debt. This is authorized by the charter.

This was a contract on the part of the bank to sell the lot free from all encumbrances. Cited on this point, 1 H. Black. 270. 280. 3 Bos. and Pull. 162. 4 Espinasse's Rep. 221. 2 Esp. Nisi Prius. 639, 640.

Was there an outstanding legal encumbrance on the lot, superior

to the title of the Bank of the Metropolis, at the time they made the sale to the defendant in error?

It must be admitted that any one interested in the trust given to Elgar, might call on him to execute it; and if he was willing to do his duty, there was no necessity to call in the aid of a Court of Chancery. The Patriotic Bank was the holder of the notes endorsed by Lane; it was the cestui que trust. The bank was not barred by time. Their judgment was interlocutory, and was not affected by the statute of limitations of Maryland. The object of the deed of trust was to pay the notes, and thus to indemnify the endorser. The bank had a right to avail itself of the trust whenever it became known to them. 3 Johns. Ch. Cases, 261.

The purchase of the lot by the Bank of the Metropolis was made subject to the deed of trust to Elgar. That deed was on record, and was notice, from its date, to all the world. Nothing but actual fraud can divest a mortgage properly on record, and that fraud must be proved. Cited, the Recording Act of Maryland, 1815. 1 Johns. Ch. Cases, 298. 394.

Another objection has been made. It is said, that although the length of time which had elapsed before the sale by Elgar, would not bar a mortgage, but it would bar a judgment. But to make a judgment a bar, the statute of limitations must be pleaded. It is not void, but may be made so by pleading the statute. There was no plea of the statute in this case.

Mr. Justice BARBOUR delivered the opinion of the Court.

This was an action of assumpsit brought by the defendant in error against the plaintiff in error, in the Circuit Court of the United States, in the county of Washington, and District of Columbia.

The declaration contains three special counts, and a count for money had and received. The three special counts are all founded upon an agreement in writing, which, after reciting that the plaintiff in the Court below had bought of the defendant in the Court below, lot No. 5, in square No. 489, in the city of Washington, for which he had paid a part of the purchase money, and executed his note for the residue, contains the following stipulation: "The Bank of the Metropolis, through the president and cashier, is hereby pledged, when the above sum, (that is, the amount of the note,) is paid, to convey the said lot, viz. lot No. 5, in square 489, in fee simple, to the said Ernest Guttschlick, his heirs, or assigns forever." Each of these counts avers the payment, at the time agreed, of the amount of the note, and the failure of the bank, on demand, to convey the lot. At the trial several bills of exception were taken, and a verdict was found, and judgment rendered in favour of the plaintiff. To reverse that judgment, this writ of error is brought.

In the argument at the bar, various objections have been urged to the sufficiency of the declaration, which we will briefly notice, in the order in which they were made.

The first objection is, that the special counts have no conclusion

There is certainly no formal conclusion to either of these counts. Each of them, after alleging the breach, terminating with the words, " Whereby, &c." Whether counts thus concluding, would have been sufficient upon a special demurrer in the Court below, it is not necessary to decide; because we are clearly of opinion, that the thirty-second section of the Judiciary act, would cure the defect, if it were admitted to have been one.

The second objection which was taken, applies to the first count, viz., that the agreement sued on, is averred to have been made by the bank, " through the president and cashier," without averring their authorization by the bank to make it. We consider this objection as wholly untenable. The averment in this count is, that the bank, through these officers, agreed to convey the lot. Now even assuming, for the sake of giving the objection its full force, that the making of this agreement was not within the competency of these officers, as such, yet it was unquestionably in the power of the bank to give authority to its own officers to do so. When, then, it is averred that the bank, by them, agreed, this averment, in effect, imports the very thing, the supposed want of which constitutes the objection: because, upon the assumption stated, the bank could have made no agreement but by agents having lawful authority. Nay, it would have been sufficient, in our opinion, that the bank agreed, without the words, " through the president and cashier:" for it is a rule in pleading, that facts may be stated according to their legal effect. Now the legal effect of an agreement made by an agent for his principal, whilst the agent is acting within the scope of his authority, is, that it is the agreement of the principal. Accordingly, it is settled that the allegation that a party made, accepted, endorsed, or delivered a bill of exchange, is sufficient, although the defendant did not, in fact, do either of these acts himself, provided he authorized the doing of them. Chitty on Bills, 356, and the authorities there cited. This principle has been applied too, in actions ex delicto, as well as ex contractu. In 6 Term Rep. 659, it was held, that an allegation that the defendant had negligently driven his cart against plaintiff's horse, was supported by evidence, that defendant's servant drove the cart. In this aspect of the question, it was one, not of pleading, but of evidence. If, on the contrary, the act were one in their regular line of duty, then, of course, the averment was unnecessary. In the case of Fleckner vs. U. States Bank, 8 Wheat. 358, the Court declare the point to be settled, " that a corporation may be bound by contracts not authorized or executed under its corporate seal, and by contracts made in the ordinary discharge of the official duty of its agents and officers."

The next objection which was raised to the declaration applied to the second count, viz., that the averment that the plaintiff was turned out of possession, was insufficient in this, that it is not averred to have been by process of law, or by the entry of one having lawful title. If entry and eviction were the ground of the action, or constituted the gravamen of the count, as in covenant on a warranty,

or for quiet enjoyment, then, indeed, a declaration or count would be defective, which omitted to aver, that the plaintiff was evicted by due process of law, or by the entry and eviction of one who, at the time of the covenant, had lawful title to the land; and having such title, entered and evicted the plaintiff; or which did not contain some averment of equivalent import. But upon examining the count in question, it will be found, that although this averment is contained in that count, it is mere surplusage; because the breach alleged is, that the defendant refused, on demand, to convey the land. There is nothing, therefore, in the objection, as applied to this count; because it would be good without averring any eviction whatsoever.

The next objection to the declaration applies to the third count, and it is this; that the plaintiff, in that count, treats the agreement as importing an undertaking on the part of the bank to convey the lot in fee simple, by a good and indefeisible title, free from encumbrances. In the view which we have taken of this subject, it is unnecessary for us to decide whether the agreement does, or does not, import such an undertaking, on the part of the bank, as is ascribed to it in this count of the declaration. This count contains an averment that the bank was not at the time of the agreement, or at any time after, seized or possessed of the lot in fee simple. We have seen that the language of the agreement is, that the bank was to convey the lot in fee simple, to the defendant in error, his heirs, or assigns forever. Now it appears from the record, that the bank claimed under a deed from Alexander Kerr, who sold the lot as trustee, under a deed of trust from Orr, the former owner, made to secure certain debts therein stated, which deed of trust was executed on the 8th of September, 1819. But Orr had previously, to wit, on the 6th of August, 1818, conveyed the same lot, in fee simple, to Joseph Elgar, as trustee for the purpose of securing certain debts therein stated, and with power to sell, in certain events therein mentioned; one of which was, that Samuel Lane, who was endorser of a note of three thousand dollars, secured by this last deed, should be sued, which event occurred as early as the year 1820. Now from this state of facts, it is apparent that at the date of the agreement, the bank was not seized of the fee simple which it contracted to convey. If the deed of trust to Elgar be considered as a mortgage, then the moment it was executed, the legal estate in fee simple was in Elgar, subject to be defeated upon the performance of the condition, and so continued in him, from that time down to the year 1835, when, under the trust deed he sold and conveyed the lot to the Patriotic Bank, which purchased at the sale. The interest of the mortgagor, according to the common law, is not liable to execution as real estate. 8 East, 467. 5 Bos. and Pull. 461. It is treated as equitable assets, 1 Vesey, 436. 4 Kent, 154. In conformity with this doctrine, this Court decided, 12 Peters, 201, that the wife of a mortgagor was not dowable; and in 13 Peters, 294, that the equity of redemption could not be taken in execution unde

a fieri facias. ·If this be so, in the case of a mortgage, the principle applies more strongly in case of a deed of trust, because the interest of the mortgagor, such as it is, is so far protected by a Court of Equity, that the mortgagee' cannot foreclose, without a decree in equity; and even in that decree a short time is allowed to the mortgagor, within which to redeem by paying the debt: whereas, in the, case of the trust, unless in case of some extrinsic matter of equity, a Court of Equity never interferes; and the only right of the grantor in the deed is the right to whatever surplus may remain after sale, of the money for which the property sold. There was then a good cause of action, on the ground that the bank had not the fee simple which it contracted to convey.

We think, then, that the declaration is not liable to any of the objections which have been urged against it.

Nor have we any doubt but that the action well lies against the bank. For although the agreement is under seal, it is not the seal of the corporation, but that of the president and cashier. It was decided in the case of Randall *vs*. Vanvechten, 19 Johns. Rep. 60, that covenant would not lie against a corporation, on a contract not under their corporate seal; but that an action of assumpsit would lie: and that it makes no difference, in regard to a corporation, whether the agent is appointed under seal or not, or whether he puts his own seal to a contract which he makes in their behalf, the doctrine of merger not applying to such a case. This doctrine we approve, and it is decisive of the objection.

We come now in order to the exceptions taken at the trial..

The first was, to the Court's admitting the agreement declared upon, to be given in evidence, until some evidence was previously given, showing the authority of the parties who executed it, to sign it.

Assuming, argumenti gratia, as we have before done as to this point, that the transaction was such that an authority was necessary to be proven, the objection resolves itself simply in a question of the order in which evidence was to be given.

We think that there is nothing in it. It was as competent for the party to prove the authority after, as it was before, giving the agreement in evidence.

The second exception was taken to the Court's admitting in evidence a letter from defendant in error to plaintiff in error, and the testimony of a witness that he had examined the records for the purpose of tracing the title of the defendant in error to the lot in question; and also a deed purporting to be executed by John P. Van Ness, president of the Bank of the Metropolis, to the defendant in error. The letter was merely to inform the plaintiff in error of the sale then advertised to be made of the lot in question, under the deed of trust from Orr to Elgar. The examination of the records made by the witness, was made for the purpose of enabling the defendant in error to decide what course to pursue in relation to the property. We see nothing objectionable in the admission either of

c 2

the letter or the testimony of the witness. The plaintiff in error certainly was not injured by its admission. The property which the defendant in error had bought being about to be sold, he causes an examination to be made, that he might know what ground he stood on; then, out of abundant caution, he wrote the letter giving notice of the sale, so that the other party might pursue whatever course they thought best for their safety. The most that can be said of it is, that he thereby proved that he had done more than he was bound to do. For if he had chosen, he might have rested upon his contract, without troubling himself either in examining records or giving the other party notice. Nor have we any doubt as to the admissibility of the deed; some of the counts in the declaration charged as a breach of the agreement, the failure of the other party to make a deed; a paper having been executed having the form of a deed, it was altogether proper then to give it in evidence, to show that being sealed, not with the corporate seal, but with that of the president of the bank, it was no deed; and thus sustain the allegation; that no deed had been made. It is clear, beyond doubt, that a paper such as this, not under the corporate seal, is not the deed of the bank, in contemplation of law.

The third exception was taken to the Court's receiving in evidence the record of a suit by the Patriotic Bank against Lane, for the purpose of showing that Lane had been sued upon a note for three thousand dollars, mentioned in the deed from B. G. Orr to Elgar, dated August 20th, 1818. We think that this record was properly admitted. For one important question in the cause was, whether the occasion had occurred which justified Elgar, the trustee, in the deed of trust from Orr, to sell the lot in question. Now one of the provisions of that deed authorized him to sell, whensoever Lane should be sued on the note for three thousand dollars, given by Orr to the Patriotic Bank and endorsed by Lane, and to pay off that note to the bank. Now this record proved that Lane had been sued, that therefore the casus fedoris had occurred; that the land was rightfully sold; and therefore we think was admissible for the purpose for which it was offered. But it was argued, that the note stated in the deed of trust as the one endorsed by Lane, purported to be negotiable at the Patriotic Bank, and that the note declared upon in the record did not purport to be negotiable at that bank, and that there was therefore a variance. If the question had been raised in the suit brought upon the note, it might have been considered a misdescription; but in this case it was offered in evidence to the jury to prove the fact that Lane had been sued; it was a question for the jury to consider, whether this evidence was sufficient to satisfy them that it was the same debt as the one described in the deed from Orr to Elgar; and therefore the principle of law, that the allegations, in the parties' pleadings, and their proofs, shall correspond, has no application.

The last exception, after setting out certain evidence given by the plaintiff, without even stating that it was all the evidence, states

that the defendant prayed an instruction, that upon that evidence, the plaintiff was not entitled to recover either upon the first, or second, or third, or fourth counts in the declaration, which instruction the Court refused to give: and we think very properly. Whether evidence is admissible or not, is a question for the Court to decide; but whether it is sufficient or not, to support the issue, is a question for the jury. This Court said, in the United States *vs.* Laub, 12 Peters, 5, " It is a point too well settled to be now drawn in question, that the effect and sufficiency of the evidence, are for the consideration and determination of the jury." And this proceeds upon this obvious principle. It is the province of the jury to decide what facts are proven. It is competent to them, to draw from the evidence before them, all such inferences and conclusions as that evidence conduces to prove. If the Court were to tell them, that upon a given state of evidence, the plaintiff could, or could not recover, then they must in the assumption of what facts were proven, either discard from their consideration such inferences as the jury might draw, or they must themselves deduce them. The first course would injure the party offering the evidence; the second would be an usurpation of the office of the jury. The only case in which the Court can make such inferences, and pass upon the sufficiency of the evidence, is by a demurrer to evidence. This would be the case, even if the bill of exception professed to state all the evidence; but the one which we are now considering does not profess to do this, and we cannot assume that it was all. For aught that appears on this record, there was other evidence; it is enough, however, that it does not appear that the evidence stated upon which the instruction was asked, was all.

Having now finished our examination of the several exceptions, we will very briefly notice some points which were pressed upon the consideration of the Court. It was said that the deed of trust from Orr to Elgar, under which the lot in question was sold, was made to indemnify Lane as endorser of Orr's note; that the Patriotic Bank had no right to call upon the trustee to sell it; that its only right was in a Court of Equity to ask to be substituted to the rights of Lane: but upon examining the deed of trust, we find in it a provision, that upon Lane's being sued, the trustee shall sell the lot, and after paying the expenses of the sale, apply the proceeds to the discharge of the notes of Orr, endorsed by Lane, of which the note on which the suit was brought against Lane, was one; so that this agreement fails in its foundation. We entirely concur with the doctrine laid down in 1 Johns. Chan. Rep. 205. 3 Johns. Chan. 261, that where a trust is created for the benefit of a third party, though without his knowledge at the time, he may affirm the trust, and enforce its execution. The truth is, that although the object of the deed of trust was to secure Lane, its provision, that, in the event which happened, of his being sued, the property should be sold, and the notes which he had endorsed, should be paid, was the most effectual means of attaining that

object: these notes were due to the bank, were held by it, and in paying them, therefore, the money must be paid to the bank. Hence the trustee was authorized to sell at its instance, and to pay it the amount.

It was also argued, that the judgment against Lane was barred by the act of limitations, and that, therefore, the trustee was not authorized to sell for the purpose of paying a debt which could not be enforced; the provision of the deed which we have already referred to, furnishes an answer also to this objection; for even if it were barred, the claim was in full force, under the trust in the deed. For, although the judgment extinguished the right of action upon the note, yet upon well-established principle, it did not operate at all, by way of extinguishment of the collateral remedy under the deed of trust, though it had relation to, and was intended to secure the payment of the same note. The result, then, of this state of things is, that the property bought by the defendant in error, of the plaintiff in error, was legally sold under an elder subsisting lien; and thus he was utterly divested of all title, so as to show an entire failure of the consideration for which he paid his money, and to enable him to maintain an action for money had and received, to recover it back. We think that there is no error in the judgment; it is, therefore, affirmed with costs.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said Circuit Court, in this cause be, and the same is hereby, affirmed, with costs and damages at the rate of six per cent. per annum.