Mr. Chief Justice Shaheey
delivered the opinion of the court.
Hugh Dickson, as administrator of James C. Dickson, filed the original bill, by which it appears that James C. Dickson died possessed of a large property, which came to the hands of Jacob B. Wamack as administrator, who sold a number of the slaves. That Wiley Davis became the purchaser, and executed his note on the 25th of February, 1836, for $ 17,357, payable in twelve months, with Thomas Land and? Hugh W. Davis as securities. That Wamack in April, 1836, transferred said note to Thomas B. Poindexter in payment of negroes purchased. That Wamack died, and the negroes so purchased, are now in possession of Taylor his administrator. That when Wamack purchased of Poindexter, he gave a deed of trust on the ne-groes, to secure the payment of the note. That Wamack’s estate is insolvent, and Dickson’s much indebted; and that Poindexter holds the note, and claims it as his own, having refused to deliver it. That he was about to sell the negroes under» the deed of trust, and also that he knew that the note given for the negroes, was a part of the assets of J. C. Dickson’s estate. The complainant claims the note or the negroes, and prayed for an injunction.
The' answer of Poindexter, admits that in 1836, J. B. Wa-mack indorsed to him a note made by Wiley Davis, Hugh W. Davis, and Thomas Land, which was payable to Wamack as the administrator of James 0. Dickson, for $17,357, ■ setting *693 out a copy, in part payment of a lot of negroes sold by respondent to Wamack at Natchez. Wamack had not the note with him, but described it as a note made by Wiley Davis, H. W. Davis, and Thomas Land, 'and agreed to produce and indorse it to respondent. The negroes were delivered to Wamack, and a bill of sale made to him individually; and he then executed the deed of trust mentioned on the same negroes. The respondent then went to Wamack’s residence at Jackson, and there the note was indorsed to him, which was the first time he had any knowledge that the note was payable to Wamack, as administrator of J. 0. Dickson deceased, and there he had no other notice than the face of the note conveyed. That the transaction was in good faith; supposes that Wamack purchased for himself, as the bill of sale was to him, admits that he is in possession of the note and claims it as his own, and will proceed to collect on it any balance that the negroes by the sale, may fail to bring, but after he is paid, he will pay the residue to those entitled-. The note made an exhibit, is payable to J. B. Wamack, administrator of the estate of J. C. Dickson.
William A. Dickson having been appointed administrator, de bonis non, in place of Hugh Dickson, filed a supplemental bill, and charges that the note was part of the assets of J. C. Dickson’s estate, and so known to be by Poindexter when he took it, and that as administrator, he is entitled either to the pegroes or the note. That he, as holder of the note, is bound to Dickson’s estate for the strictest vigilance in preventing loss. That he has been guilty of neglect by which some of the parties to the note may be discharged; that he is informed that Poindexter omitted to demand payment, or to give any notice of the non-payment to Wamack’s administrator; that he has made no effort to collect. That he has omitted to have it probated and presented to Davis’s administrator, who had died in the mean time, and that the sureties therefore claimed to be exonerated, and that the estate of Davis was also thereby exonerated. It is suggested that Land and Davis may be unable to pay, even if liable. That Poindexter’s conduct has fixed him with absolute responsibility for the amount of the note, but *694 that complainant has a right to hold the parties to the note, responsible. Prays that Wamack’s administrators be made parties; that the note be declared unadministered assets; that Poindexter be held responsible for want of proper vigilance, and charged without exonerating others, and that an account be taken, &c,
Then comes another supplemental and amended bill, which states the death of Land, and prays his administrator to ,be made a party. It further states that the note was given for negroes belonging to the estate of J. C. Dickson, which were sold by Wamack as administrator to Davis. That when Davis died, the negroes purchased by him of Wamack as administrator, were sold by his, Davis’s, administratrix, and that Mary J. Davis, Thomas Helm, James Gwin, and James Heffner became the purchasers, or are now in possession under sub-purchasers of the negroes. That by law, said negroes are bound to the administrator of Dickson, for the payment of the note given by Davis as in case of a mortgage, and that all the parties are insolvent. That Poindexter refuses to deliver the note. Prayer; that the statutory lien be declared and enforced, and for an injunction against the removal of the negroes, and that Poindexter be compelled to deliver the note, &c.
Joseph W. Miller files another supplement, praying as administrator on J. C. Dickson’s estate, in the place of the former administrator, to be admitted complainant in place of William A. Dickson, and charging that David Davi's has the two negroes which were formerly in the possession of Mrs. M. J. Davis, with a knowledge of the lien.
Helm, Mary J. Davis, David Davis, James Gordon and John Heffner demurred, and the chancellor sustained the demurrer, and dismissed the bills as to them.
As in many other cases, we are not informed as to the view which the chancellor took of the case, or of the reasons which operated on his mind, in sustaining the demurrer. Multifariousness, and want of equity have been urged as sufficient reasons for sustaining the decree.
The bill cannot be regarded as multifarious. The adminis *695 trator of Dickson, in right of the estate, claims that the note belongs to the estate, because-it was improperly transferred. The note is a security for the debt, and constitutes the foundation of the whole proceeding. And as a security for the ultimate payment of the note, .the law has created a lien or mortgage on the property purchased by Davis for which he • gave the note. This property, if liable at all, is liable in the hands of those holding under Davis, or those who purchased at his administrator’s sale. The statute provides, that when property, real or personal, of a deceased person or minor, shall be sold by order of a probate court, it shall be held and remain subject to the amount for which it was sold, in the hands of the purchaser or his assignee, in the same manner as if a mortgage had been taken on said property. How. <fc Hut. Dig. 417. They stand as assignees, and if Davis would be a proper party if living, so must they be proper parties. They took the property subject to the lien, and if that lien still exists, it could not be enforced without making them parties. Poindexter is also a proper party. He claims to be the rightful owner of the note, which is the foundation of the -whole proceeding. Wamack’s administrators are proper parties, for he transfered the note, and they have - a right to assert the legality of the transaction. Those whose interest seems to be most remote, are Land’s administrators, and Hugh Davis, who are joint ipakers with Wiley Davis, and yet it is difficult to see how Davis could be made defendant if living, without also including' them. On the whole, I think the whole of the defendants have such an interest in the subject of controversy, as to make them proper defendants. One general right is claimed, though the defendants may have separate and distinct interests, but it is a distinct interest in the same thing, Mitford’s Pleading, 182.
The equity of the complainant seems to be also sufficiently apparent. Davis purchased the negroes, at the administrator’s sale, and 'gave his note for the purchase-money, and the law gives a mortgage to secure its payment. The note has been improperly transferred, and the complainant seeks its restoration, together with a foreclosure of the mortgage, for which last *696 purpose, at least, chancery is the proper forum. If the transfer was a valid one, then, of course, he is not entitled to his remedy. Was it so 1 The administrator being the legal holder of negotiable paper due the estate, may transfer it for legal purposes, and his indorsee will hold it. But an administrator can do no act lawfully, which is a breach of his duty. He is to adfhinister, by paying the debts, and taking care of the estate; but he cannot convert it tq his own use, and if he should do so, the right of property is not divested. He cannot appropriate the assets to the payment of his own debts, nor to the' purchase of property for himself. But being the legal holder of negotiable paper, he may transfer it; and if his indorsee be innocent, and not chargeable with connivance, he will hold it. If, on the other hand, the indorsee knows that such appropriation is illegal, then he cannot hold it. And as an administrator cannot appropriate such paper to the payment of his own debts, or to the purchase of property for himself, without a violation of duty, the indorsee who. takes it for such purposes, knowing that it is a part of the assets, is a participant in the fraud, and cannot be allowed to profit by it. Leatherman v. Prosser, 4 Howard, 237. Poindexter is charged with having taken the transfer of the note, with full knowledge. He admits it, by saying that, at the time the note was delivered to him, was the first knowledge he had of its character, and that he then had no further knowledge than such as was derived from the face of the note, which was payable to Wamack, as the administrator of James 0. Dickson. This was a circumstance which, of itself, constitutes notice. The answer, then, contains an unqualified admission of the truth of the charge in the bill. The charge in the bill, that he took the note, knowing it to belong to Dickson’s estate, constitutes an equity to this extent, that would save the bill from the operation of the demurrer. This is the principal ground, on which the aid of a court of chancery is invoked. It lays the foundation for relief; and unless this equity has been destroyed or defeated, by some other act, then the demurrer was improperly sustained. Has it been so lost?
It is insisted, that the bill shows that the note was barred, *697 because'it was not presented to the administrator of Wiley Davis, within eighteen months aftér administration, which discharged his estate from liability, and that the demurrer was, therefore, properly sustained. If for want of presentation, the estate of Dicksoii lost all remedy, this position must be correct; but has the remedy been lost? The statute declares, that “ all claims against th'e es.tates of deceased persons, shall be presented to the executor, administrator, or collector, within eighteen months after the publication.of notice for that purpose ; ” and that all claims not so presented shall be barred, and the estate discharged therefrom. The object of this law is too apparent to require comment. Its design was, to let the administrator know the condition of the estate, whether solvent or insolvent, and to enable him to apply the assets as the law directs. To constitute a ba.r, by the failure to present in eighteen months, it must appear affirmatively, that the administrator advertised; for it is only within eighteen months after advertisement that claims are to be presented. It does not appear, in this instance, that the administrator did advertise, and consequently it may be questionable, whether the allegations in the bill should be taken, as showing a sufficient bar. But suppose this allegation made by the complainant, is,to be taken as against him as a sufficient-bar, does it then follow, that his equity has been lost ?
Originally there were two remedies; one on the note, and the - other on the legal mortgage; and Dickson’s administrator might have pursued either, at his election. When there are two remedies, one may be barred by limitation, and the other not. For instance, the act of limitations may have run against a note, but not against a mortgage taken to secure its payment; and in such cases, the party may proceed on the remedy which is not barred. Thayer v. Mann, 19 Pickering, 535. Bank of the Metropolis v. Gultschtick, 14 Peters, 19.
The conclusion from this would be, that although the remedy on the note was lost, yet that the remedy on the mortgage was not, unless, indeed, this act be something more than an ordinary act of limitations. Even if the debt is barred, or annihi *698 lated, still there is a further question which, in this case, is important. The statute requires “ all claims ” to be presented. There is every reason to believe, that it had reference to debts, or the evidences of debts. It does not say that liens shall be ^presented; and although a lien may be a claim as to particular . property, yet claims are not liens. , If it be said, that liens also j must be presented, the answer is, that liens are always in a ¡ state of presentation, at least those which are of record. The object of the statute, we have said, is, that the administrator maybe informed of the condition of the estate; now, if the claim be of such a nature, that he must be informed of its existence, is not the object of the law accomplished 1 Suppose, then, that a creditor holds a mortgage on property of the estate, which could not take effect without being recorded; the record is constructive notice to everybody. The law supposes, that every one has a knowledge of its existence. Now, could the administrator be better informed by the actual presentation, than the law supposes him to be by the record 1 He could not ; I for all legal purposes, he is as fully informed by the one as by the other.
The equity here is founded, not on an actual, but on a legal mortgage; one which exists by operation of law merely. The law declares, that the property shall be bound, as in case of mortgage. How. & Hut. Dig. 417. The imagination, then, must first create a mortgage deed, and then transfer it to the record of the proper office, for no mortgage binds until it is recorded. That which binds as a mortgage, must possess all the attributes of a valid operative mortgage. An actual mort- ^ gage would have been notice to the administrator. It would have been continually in a state of presentation. Must not the legal mortgage stand upon the same ground 1 If it does not, then it is something lass than a mortgage, and if we can make it a different thing, then we can destroy its existence. The law binds the property, in the hands of the assignee, and says nothing as to the notice. The inference is, that when it declared the existence of a mortgage, it intended to assimilate it, in all, respects, to a common mortgage, and that the assignee *699 should lake notice at his peril. It was given for the protection of the estate, and,we cannot .defeat the protection which it affords, by declaring it inferior to, or different from, what the law has made it. It is safer, on the contrary, to consider it in every particular as a mortgage, and to require all having an interest to notice it as such.
In addition to this, an administrator sells by order of court, and returns his account of sales, which is then made a matter of-record, which is constructive notice to every one. Wamack, no doubt, discharged his duty in this respect, and if the legal mortgage required notoriety, it must in this way have received it. The note, if it is not barred, constitutes a claim against the estate of Davis, but the negroes for which it was given have been sold, and the complainánt seeks to enforce his mortgage a'gainst the purchasers, in whose hands the law makes them liable. Now suppose the note is barred as to the estate, does this also bar the mortgage, as to the holders of the negroes 1 It cannot do so. The mortgage is not a claim against’ the estate, but against property claimed by third parties. To them it piakes no difference, whether the note is barred or not, for it is in no way connected with their redress, in case they should lose the property. It is plain, then, in this case, that although one remedy be barred, the other is not. The bar relieves no one but the estate. Considering, then, that the mortgage was not barred, or the lien lost, I think there is equity in the bill, and that the decree of the chancellor should be reversed, and the cause remanded for further .proceedings, on the merits.
Note by the RepoRTEes. This cause was decided before Judge Thacher was elected to the supreme bench, at the July term, 1843, by Judges Sharkey, Turner, and Clayton. It should have been placed in the first "volume of our reports, but the delay occasioned by the absence of Mr. Yerger’s brief, which had been withdrawn from the papers, and which did not reach us until after the second volume was in course of preparation, is the reason why it appears jn this volume.