CAGUAS COMPANY, INC., Plaintiff and Appellee, *v.* PEDRO J. MOMBILLE, Defendant and Appellant.

No. 8051. Argued January 29, 1941.—Decided March 20, 1941.

302

M. *Guzmán Texidor*, for appellant. *Fiddler, McConnell & González* and *Jorge M. Morales*, for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

The Caguas Company, Inc., a corporation organized in accordance with the laws of the State of Maryland, filed suit against Pedro J. Mombille for the collection of $10,014.76, interest and costs.

It alleged that the defendant subscribed to the order of the United Porto Rican Bank and delivered to the same on July 1, 1932, and on April 13, 1933, the promissory notes Numbered 186 and 3499 for the amount of $14,504.95 and $1.75 respectively, which notes fell due on June 30, 1933; that the United Porto Rican Bank made a blank endorsement and delivered them to the National City Bank of New York, who in turn endorsed and delivered them to the East Porto Rican Sugar Co., who endorsed and delivered them to the plaintiff, who is the holder at present; that notwithstanding the demands of the plaintiff, neither the defendant nor any other person has paid the amount of the promissory note No. 3499 in whole or in part, nor its interest, as well as the $10,013.01 to which the promissory note No. 186 has been reduced through partial payments, nor the interest on that sum.

The defendant answered denying generally and specifically all and each one of the averments of the complaint and alleging as special defenses that the plaintiff lacks capacity to sue because, as it appears from the complaint that it is a foreign corporation, it does not allege that it has complied with the requirements of Section 38 of the Corporations Act and that the complaint does not allege facts sufficient to establish a sound cause of action.

The case was heard and it was finally decided by judgment rendered for the plaintiff.

The defendant appealed. He assigns five errors in his brief, committed in his opinion by the trial court in admitting in evidence promissory note No. 186 and the deed No. 12 executed before W. L. Newsom on April 3, 1934, by E.

304

and G. Aponte and the defendant; in denying his motion for nonsuit and his allegation of want of capacity on the part of the plaintiff to sue in the Island and in rendering judgment for the plaintiff.

We shall begin by considering the fourth assigned error, that is, the one which refers to the capacity of the plaintiff to file this suit.

The applicable law is contained in Section 38 of the Private Corporations Act of March 9, 1911, as it was amended, which provides:

"No foreign corporation doing business in Porto Rico shall maintain any action in Porto Rico upon any contract made by it in this Island, unless prior to the making of such contract it shall have complied with the provisions of this chapter with regard to qualifying to do business in Porto Rico. This prohibition shall also apply to any assignee of any such foreign corporation or to any person claiming under such assignee or such foreign corporation, or under either of them."

It is admitted that the plaintiff corporation did not comply with the legal provisions in question, but it is held that it was not bound to comply with them because it did not do business in Puerto Rico, and that in fact is the truth.

All that was proven in regard to the business of the plaintiff was that the plaintiff was the holder of the obligations involved and this, of itself, does not imply that it did business in the Island.

In the administrative appeals taken in the cases of *Isabella Grove* v. *Registrar,* 24 P.R.R. 240 and *P. R. Leaf Tobacco Co.* v. *Registrar,* 24 P.R.R. 245, it was held that: "the acquisition and ownership of real property by an unregistered foreign corporation is not equivalent to engaging in business within the meaning of the Act of March 9, 1911."

And as it was recently stated in the case of *Mutual Rice Co., Inc.* v. *Truyol,* 52 P.R.R. 7, 10:

" . . . The court was mistaken in holding that plaintiff could not sue on the alleged contract because it had not obtained permis-

sion to do business in Puerto Rico. Individual contracts from outside firms do not constitute 'doing business in Puerto Rico.' *Ismert Hinke Milling Co.* v. *Muñoz,* 37 P.R.R. 762. Otherwise all mail orders would be prohibited.''

▮▮▮▮ The first and second errors may and should be jointly considered. They refer to the admission in evidence of promissory note No. 186 and of deed No. 12.

The note was shown to one of the witnesses who said: ''It is a promissory note subscribed by Gregorio Aponte as attorney-in-fact of Pedro Mombille on July 1, 1932, · for the amount of $14,504.95, becoming due on June 30, 1933.''

The defendant objected to the admission of this instrument in evidence because what was alleged in the complaint was that the promissory note had been subscribed by Pedro J. Mombille.

The plaintiff, through its attorney, informed the court that in order to obviate that possible objection, Mr. Mombille had afterwards executed deed No. 12 before Notary W. L. Newsom, where reference is made to the promissory note and its execution is ratified, and offered it in evidence. The defendant again objected. And the court stated and decided:

''The court admits the promissory note in view of deed No. 12 executed before Walter L. Newsom, Jr., on April 3, 1934, by Enrique Aponte, Gregorio Aponte and Pedro J. Mombille, in which reference is made to promissory note No. 186 of July 1, 1932, for the amount of $14,504.95. Said reference is to the effect that Pedro J. Mombille paid the amount of $138.23 to be credited to said promissory note together with some others, and that all said notes, exception made of the last one, have been endorsed and delivered by the Unitd Porto Rican Bank to the National City Bank, etc. The following is stated in the second paragraph of this deed: That in regard to said sugar cane plantations, the appearing parties Pedro J. Mombille, in his own right and as tutor of his wife, María Jesús Vázquez, and the United Porto Rican Bank, represented by its vice-president, Fernando Margarida, through a private document dated December 12, 1930, acknowledged by affidavit No. 7443 before the Notary Joaquín Vendrell Joubert, entered into a certain crop loan contract by virtue of which Pedro J. Mombille constituted a

crop loan lien on the aforementioned sugar cane plantations to guarantee the payment of the following promissory notes issued to the order of the United Porto Rican Bank by the appearing party, Pedro J. Mombille, all in accordance with the terms of said crop loan contract etc. And then reference is made of the promissory notes executed, and among them the note No. 186 of July 1, 1932, for $14,504.95 is found. The aforementioned deed which is already identified, is also admitted in regard to the admission of the promissory note, to be marked by the clerk as exhibits 2 and 3 of the plaintiff."

The mere statement of what took place is sufficient to conclude that the errors under our consideration were not committed.

The evidence was congruous with what was alleged in the complaint. It was not necessary in order to present it to allege the agency. To this effect, it is stated in Bancroft's Code Pleading, Vol. 2, page 1177, Section 821:

"An allegation of acts done or knowledge obtained by the principal is fully satisfied by proof of such acts or such knowledge on the part of the agent, and in a complaint it is unnecessary to set forth the agency. So, in an action by or against a principal upon a contract made by his agent, it is proper to allege that the contract was made by the principal, without mentioning the agency; or, stated in another way, an allegation that a contract was made or an act was done by a named person may be supported by proof that it was made or done by him through his authorized agent."

In one of the cases cited in the treatise, decided by the Supreme Court of the United States more than a century ago, *Bank of the Metropolis* v. *Guttschlick,* 14 Pet. 19, 39 U.S. 19, 27; 10 L. Ed. 335, it was held:

"The second objection which was taken, applies to the first count, viz., that the agreement sued on, is averred to have been made by the bank, 'through the president and cashier', without averring their authorization by the bank to make it. We consider this objection as wholly untenable. The averment in this count is, that the bank, through these officers, agreed to convey the lot. Now, even assuming, for the sake of giving the objection its full force, that the making of this agreement was not within the competency of these of-

ficers, as such, yet it was, unquestionably, in the power of the bank, to give authority to his own officers to do so. When, then, it is averred, that the bank, by them, agreed, this averment, in effect, imports the very thing, the supposed want of which constitutes the objection; because, upon the assumption stated, the bank could have made no agreement, but by agents having lawful authority. Nay, it would have been sufficient, in our opinion, that the bank agreed, without the words, 'through the president and cashier;' for it is a rule in pleading, that facts may be stated according to their legal effect. Now, the legal effect of an agreement made by an agent for his principal, whilst the agent is acting within the scope of his authority, is, that it is agreement of the principal. Accordingly, it is settled, that the allegation that a party made, accepted, indorsed or delivered a bill of exchange, is sufficient, although the defendant did not, in fact, do either of these acts himself, provided he authorized the doing of them. Chitty on Bills 356, and the authorities there cited."

Any doubt that there might have been in regard to the obligation contracted by the defendant by virtue of the promissory note is cleared by the deed which contains a ratification of said obligation by the defendant himself, whose effect is to render the fact which was ratified valid from the moment when it was performed in the same manner as if it had been duly authorized.

"In accordance with the maxim, *Omnis ratihabitio retrotrahitur et mandato priori aequiparatur*—every ratification relates back and is equivalent to prior authority—it is a well settled rule subject to certain exceptions, that a ratification relates back to the time when the unauthorized act was done and makes it as effective from that time as though it had been originally authorized, and that therefore upon ratification the parties to all intents and purposes stand in the same position, in respect to rights and liabilities arising out of such act, as though the person assuming to act as agent had acted under authority previously conferred, and in some jurisdictions this rule is expressly prescribed by statute. A valid ratification creates or establishes the relation of agency in respect to a matter as to which none before existed, and renders valid and binding the unauthorized act or contract which before was invalid. It operates not merely as presumptive evidence of previous authority, but per se as a confirmation of the act of the agent." 2 C. J., Section 138, page 516.

■ The third assigned error, that is, the one which relates to the motion for nonsuit, is based on the fact that the motion should have been granted, since the plaintiff did not allege or prove that it was the holder in good faith and for consideration of the promissory notes. The error was not committed.

It was not necessary to allege that the plaintiff was the owner of the promissory note object of the action. It was sufficient to allege, as it was alleged, that the promissory note was one made to order and that the plaintiff was the holder of the same through endorsement and delivery. Said averments, together with the others contained in the complaint, are sufficient to state the cause of action which is exercised. See *Schlüter & Co.* v. *González,* 34 P.R.R. 292; *Banco de Puerto Rico* v. *Portela,* 46 P.R.R. 104, and *National City Bank* v. *Echevarría,* 50 P.R.R. 825.

Neither was it necessary to allege that the plaintiff was the holder in good faith and the consideration for the conveyance. All which is stated in Section 404 of the Code of Commerce (1932 ed.) Section 52 of the Uniform Negotiable Instruments Act, (Law of 1930, page 172), is:

"The holder of a negotiable instrument may sue thereon in his own name and payment to him in due course discharges the instrument."

And the decisions of courts have established that:

"A promissory note imports a consideration, and none need be pleaded." *Winters* v. *Rush,* 34 Cal. 136.

"In an action upon a negotiable instrument, it is not necessary to allege or prove a consideration." *Hualde Ranch Co.* v. *Beebe,* 3 Cal. App. (2d) 592, 40 P. (2d) 545.

It is true that the following Section of the Code of Commerce, number 405, equivalent to Section 53 of the Uniform Negotiable Instruments Act, (Laws of 1930, page 172), reads:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

But it does not mean that it is necessary to allege in the complaint all the elements of good faith. The good faith of the holder is presumed from the holding itself. In regard to the evidence, the presentment of the instrument, as it was done here, is sufficient, it remaining in the record in the power of the court and under the custody of the clerk of the same. Upon examining it, the court was able to find out whether it was complete and was of ordinary appearance and in default of any averment and proof to the contrary, it could have presumed that the holder took it in good faith and for consideration before its maturity and that when it was endorsed to him, he had no knowledge of any defect in the instrument itself or in the right of the person who negotiated it.

If it appeared from the instrument itself or through any other medium of proof that the plaintiff became the holder of the instrument after its maturity, there would be lacking one of the requisites of good faith and notwithstanding this, it would be able to sue subject to the defenses which the debtor may have against the original owner of the obligation. None of those defenses was set up in this case. Nor was any data brought forth which might tend to destroy the presumption of good faith in the holder.

██ The fifth assigned error was not committed either.

Some of the arguments set forth by the appellant to uphold said error have been considered and adversely decided in the discussion of the preceding assignments. We shall limit ourselves in consequence, to consider those which have

not already been discussed, like those relative to the date of the endorsement, to the scope of a certain certificate which appears on the back of promissory note No. 186 and to another which the defendant introduced in evidence.

In regard to the date of the endorsement, it will suffice to say that Section 464 of the Code of Civil Procedure (1933 ed.) establishes in its Section 22, as a *juris tantum* presumption, that the endorsement of a promissory note or negotiable instrument was made on the date and in the place where said note or instrument was executed, and defendant did not allege or prove anything tending to destroy that presumption.

Furthermore, even if the date of the endorsement had not been proved, then, considering the plaintiff as the agent for collection, it would be necessary to acknowledge to it its right to sue. *Domenech, Treas.* v. *Suau, Fiol & Co.*, 49 P.R.R. 738.

■ The certificate appearing from the promissory note invoked by appellant, reads as follows:

"*I certify:* That the crop loan and mortgage liens constituted by the private document of December 12, 1930, acknowledged through affidavit No. 7443, executed before Notary Joaquín Vendrell, and by the private document dated December 16, 1929, acknowledged through affidavit No. 6864, before Notary Joaquín Vendrell, as they were respectively enlarged, have been cancelled by deed No. 12 of this same date, executed before me. Caguas, P. R., April 3, 1934. (Sgd.) Walter L. Newsom, Jr., Notary Public."

After transcribing the above certificate in his brief, the appellant asks the following question: "If the liens arising from the crop loan contract including the promissory notes have been cancelled according to the evidence of the plaintiff, how is it possible to try to collect on a promissory note which is already cancelled?"

That question has a fact as its basis, that of the cancellation of the promissory notes, which does not find support in the deed. It appears from the latter, that the cancella-

tion of the crop loan lien was effected to convey to Enrique Aponte the sugar cane plantations which were originally the property of the defendant, the amount of said sale having been received to be credited to the crop loan promissory notes which he had in his possession. The cancellation of a guaranty does not imply the cancellation of the debt thus guaranteed. The creditor may at any moment part with the property which guarantees his credit without losing the latter. By deed No. 12, and by mutual agreement of the interested parties, the crop loan guaranty was cancelled, but the guaranteed obligation remained in full force and effect.

█ The other certificate, the one presented by the defendant appellant himself, bears a relation to another suit filed in the Federal Court and to which the witness Isidro Quiñones also referred in his testimony. Deciding the issue which was joined in that manner, and after explaining the same and citing the decisions which it considered pertinent, the trial court stated in its statement of the case and opinion:

"The fact that this promissory note may be adjudicated to a third party in the suit before the Federal Court, should not worry the defendant. In such case, if the plaintiff in this action has collected the amount of the same, it will be responsible to the third party for the price which the latter has paid for said promissory note. The only thing which might worry the defendant is that said promissory note be collected from him for a second time, a thing which is not possible, since according to Section 404 of the Code of Commerce, so often mentioned, the payment which may be made to the plaintiff within this suit will cancel the document."

And this is sufficient.

For the foregoing reasons, the appeal must be dismissed and the judgment appealed from affirmed.

Mr. Justice Todd, Jr., took no part in the decision of this case.