MUTUAL RICE Co., INC., demandante y apelante, *v.* SUCESIÓN DE MIGUEL TRUYOL, demandada y apelada.

Núm. 6992.—*Sometido:* Noviembre 6, 1936. *Resuelto:* Julio 16, 1937.

_____

* NOTA: Véase el prefacio.

8

*Besosa & Besosa,* abogados de la apelante; *T. Bernardini de la Huerta,* abogado de la apelada.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

La demandante y apelante instó demanda sobre un supuesto contrato otorgado entre las partes en este recurso. Los demandados, herederos del supuesto comprador Miguel Truyol, negaron la existencia del contrato. La Corte de Distrito de Guayama dictó sentencia en favor de los demandados.

La médula de su defensa fué que la demandante entró en negociaciones con Truyol sobre la venta de arroz; que se convino en todos los términos de la supuesta venta, pero que el contrato nunca fué perfeccionado. Según los demandados y la corte, hubo simplemente una propuesta de venta que debía ser ratificada por la demandante y tal ratificación nunca tuvo lugar.

Más específicamente, los demandados alegaron y la corte tuvo derecho a creer y, según concluyó, esencialmente creyó que en marzo 6, 1926, Roses & Cía. Sucrs., por mediación de su agente P. Calderón, y en representación de la firma demandante, transmitió al demandado una propuesta para vender 400 sacos de arroz a $5.70 el saco, y que en dicha fecha, y con

el objeto de perfeccionar la operación, se firmó el documento de costumbre usado por Roses & Cía. en estos casos, en el cual se consignaron las condiciones generales de la propuesta y además se hacía constar que las partes se regirían por los reglamentos de la Cámara de Comercio de Puerto Rico y por los términos del contrato de la Rice Millers' Association, firmándose dicha propuesta por el agente, y el "ticket" adherido a la misma, sin especificaciones de dicha propuesta, por el demandado Miguel Truyol, para el caso de aceptación en firme de la operación; que transcurrieron más de quince días sin que Roses & Cía., su agente o la demandante se comunicaran con el demandado; que tal proceder es contrario a los usos del comercio en Puerto Rico y a los reglamentos de nuestra Cámara de Comercio, según los cuales las ofertas se entenderán en vigor en manos de los vendedores por no más de 48 horas para su aceptación final dentro de ese término; que en 24 de marzo Roses & Cía. inquirió por carta sobre la propuesta y el demandado, no obstante el hecho de que su oferta no había sido confirmada, contestó que estaba inclinado a aceptarla si se garantizaba el arroz por treinta días después de levantado, y que su oferta nunca fué aceptada o contestada.

■■ El primero y más importante de los errores señalados ataca la conclusión de la corte de que la demandante dejó de justificar el perfeccionamiento de un contrato el 24 de marzo de 1926, conforme se alega en la demanda. La demandante da gran énfasis al hecho de que la corte nunca insistió en que el demandado presentara el contrato original de 24 de marzo de 1926. Es cierto que el "ticket" o talón, que fué presentado en evidencia por la demandante, decía:

"Esto representa nuestro contrato núm. 1202. Entre Mutual Rice Mill. Co. vendedor y Sr. Miguel Truyol, comprador, cuyo original en tinta representa la única copia y el comprador abajo firmante se compromete a demostrar cuando así se requiera por el vendedor o su representante. (Fdo.) Miguel Truyol, Firma del comprador."

El demandado y su abogado a través de todo el caso sostuvieron que no tenían semejante documento en su poder. Fueron corroborados por Pablo Calderón, el representante que negoció directamente con Miguel Truyol. La evidencia demostró definitivamente que el primer cargamento de arroz destinado a dar cumplimiento al supuesto contrato fué embarcado el 22 de marzo de 1926. Esto tendería a sostener la teoría del demandado de que la transacción en cuestión fué discutida con anterioridad al 24 de marzo de dicho año y en verdad para refutar la proposición de que el contrato fué celebrado en esa fecha posterior. De ser esto así la corte estuvo justificada al creer que el demandado no poseía un contrato fechado marzo 24, 1926, y en su consecuencia al no ordenarle que lo presentara.

██ De la prueba se desprende que según el contrato de la Rice Millers' Association, vigente en aquella época, y que, conforme se admite, gobernaba la transacción entre las partes, los contratos relativos a la compra de arroz no eran obligatorios para el vendedor hasta que fueran aceptados y confirmados por él por carta o por cable. No se probó tal confirmación en el presente caso. Cuando a José González Torres, agente de la demandante, se le preguntó sobre tal confirmación y por qué no había traído a la corte la evidencia adecuada, contestó que la parte contraria nunca le había pedido que así lo hiciera. El peso de probar el contrato recaía sobre la parte demandante y no existe prueba, fuera de la aseveración oral, de que jamás hubiera una aceptación.

No debemos olvidar que P. Calderón, el verdadero agente de Roses & Cía., que a su vez representaba a la aquí demandante, declaró que la confirmación nunca se había materializado y que la oferta se hizo en marzo 6, 1926. La corte sentenciadora pudo dar crédito a ese testigo a pesar de su aparente vacilación mientras la demandante le repreguntaba.

La explicación de la transacción dada por el agente de la demandante, José González Torres, es poco satisfactoria.

Trató de decir que el contrato que corresponde al talón presentado como prueba por la demandante era el contrato final. Declara entonces que éste estaba sujeto a ser confirmado por sus principales. Afirma que hubo un contrato, mas no puede decir cuándo quedó perfeccionado, no presenta prueba documental de la aceptación y en general resulta más bien impreciso sobre toda la cuestión.

Se discute una carta de Roses & Cía. pero ésta claramente no fué una aceptación.

█·La mayor parte de los errores no necesitan ser considerados. El cuarto debe serlo. La corte estuvo equivocada al resolver que la demandante no podía demandar sobre el supuesto contrato por no haber obtenido permiso para hacer negocios en Puerto Rico. Los contratos individuales celebrados por firmas del exterior no equivalen a "hacer negocios en Puerto Rico." *Ismert Hinke Milling Co.* v. *Muñoz,* 37 D.P.R. 819. De lo contrario todos los pedidos hechos por correo estarían prohibidos.

*Debe confirmarse la sentencia apelada.*

Los Jueces Señores Presidente Del Toro y Asociado Córdova Dávila no intervinieron.