CAGUAS COMPANY, INC., demandante y apelada, *v.* PEDRO J. MOMBILLE, demandado y apelante.

Núm. 8051.—*Sometido:* Enero 29, 1941. *Resuelto:* Marzo 20, 1941.

*M. Guzmán Texidor,* abogado del apelante; *Fiddler, McConnell & González* y *Jorge M. Morales,* abogados de la apelada.

Eᴌ Jᴜᴇᴢ Pʀᴇsɪᴅᴇɴᴛᴇ Sᴇñᴏʀ Dᴇʟ Tᴏʀᴏ emitió la opinión del tribunal.

La Caguas Company, Inc., una corporación organizada de acuerdo con las leyes del estado de Maryland, demandó a Pedro J. Mombille en cobro de diez mil catorce dólares y setenta y seis centavos, intereses y costas.

Alegó que el demandado suscribió a la orden de The United Porto Rican Bank y entregó a dicho banco en julio 1, 1932, y abril 13, 1933, los pagarés números 186 y 3499 por $14,504.95 y $1.75, respectivamente, a vencer en junio 30, 1933; que el United Porto Rican Bank los endosó en blanco y los entregó al National City Bank of New York que a su vez los endosó y entregó a la East Porto Rican Sugar Company que los endosó y entregó a la demandante quien es hoy su tenedora; y que a pesar de los requerimientos de la demandante, ni el demandado ni persona alguna han satisfecho el pagaré número 3499 en todo ni en parte, ni sus intereses, así como tampoco los $10,013.01 a que ha quedado reducido mediante abonos parciales el pagaré número 186, ni los intereses sobre dicha suma.

Contestó el demandado negando general y específicamente todas y cada una de las alegaciones de la demanda y alegando como defensas especiales que la demandante carece de capacidad para demandar porque apareciendo de la demanda que es una corporación extranjera, no alega que haya cumplido con los requisitos de la sección 38 de la Ley de Corporaciones y que la demanda no aduce hechos suficientes para determinar una buena causa de acción.

Fué el pleito a juicio y quedó resuelto finalmente por sentencia declarando la demanda con lugar.

Apeló el demandado. Señala en su alegato cinco errores cometidos a su juicio por la corte sentenciadora al admitir en evidencia el pagaré número 186 y la escritura número 12 otorgada ante W. L. Newsom en abril 3, 1934, por E. y G. Aponte y el demandado, al desestimar su moción de *nonsuit* y su alegación de falta de capacidad de la demandante para demandar en la isla y al declarar la demanda con lugar.

Comenzaremos nuestro estudio por el cuarto señalamiento de error o sea el que se refiere a la capacidad de la demandante para iniciar este pleito.

La ley aplicable está contenida en la sección 38 de la Ley de Corporaciones Privadas de marzo 9, 1911, según enmendada, que ordena:

"Ninguna corporación extranjera que haga negocios en Puerto Rico podrá sostener una acción en Puerto Rico por virtud de contrato alguno celebrado por la misma en esta isla, a menos que con anterioridad a la celebración de dicho contrato haya dado cumplimiento a las disposiciones de este capítulo con respecto a las formalidades necesarias para hacer negocios en Puerto Rico. Esta prohibición será también aplicable a cualquier cesionario de cualquier corporación extranjera o a cualquier persona que demandare por cuenta de dicho cesionario o corporación extranjera o de ambas."

Se admite que la corporación demandante no cumplió con las disposiciones legales de que se trata pero se sostiene que no tenía el deber de cumplirlas porque ella no hacía negocios en Puerto Rico, y así es en efecto.

Todo lo que se probó en relación con los negocios de la demandante consistió en que la demandante era tenedora de las obligaciones en cuestión y ello, por sí solo, no constituye hacer negocios en la isla.

En los recursos gubernativos de *Isabela Grove, Inc.* v. *Registrador*, 24 D.P.R. 257, y *Porto Rican Leaf Tobacco Co.* v. *Registrador*, 24 D.P.R. 262, se resolvió que "el adquirir y poseer bienes inmuebles una corporación extranjera no registrada en Puerto Rico no constituye emprender negocios dentro de la ley de 9 de marzo de 1911."

Y como se dijo no ha mucho en el caso de *Mutual Rice Co., Inc.* v. *Sucn. Truyol,* 52 D.P.R. 7, 11:

". . . La corte estuvo equivocada al resolver que la demandante no podía demandar sobre el supuesto contrato por no haber obtenido permiso para hacer negocios en Puerto Rico. Los contratos individuales celebrados por firmas del exterior no equivalen a 'hacer negocios en Puerto Rico.' *Ismert Hinke Milling Co.* v. *Muñoz,* 37 D.P.R. 819. De lo contrario todos los pedidos hechos por correo estarían prohibidos."

Los errores primero y segundo pueden y deben estudiarse conjuntamente. Se refieren a la admisión en evidencia del pagaré número 186 y de la escritura número 12.

El pagaré fué mostrado a uno de los testigos que dijo: "Es un pagaré firmado por Gregorio Aponte como poderdante (sic) de Pedro Mombille el día 1 de julio de 1932 por la suma de $14,504.95, a vencer en junio 30, 1933."

Se opuso a su admisión el demandado porque en la demanda lo alegado fué que el pagaré había sido suscrito por Pedro J. Mombille.

La demandante por su abogado manifestó a la corte que para subsanar esa posible objeción, posteriormente el Sr. Mombille otorgó la escritura número doce ante el notario W. L. Newsom en que se hace relación del pagaré y se ratifica su otorgamiento y la ofreció en evidencia. También se opuso el demandado. Y la corte dijo y resolvió:

"La corte admite el pagaré, vista la escritura núm. 12, otorgada ante Walter L. Newsom Jr., el día 3 de abril de 1934, por Enrique Aponte, Gregorio Aponte y Pedro J. Mombille, en la que se hace referencia al pagaré núm. 186, de fecha julio primero de 1932, por $14,504.95, como que a cuenta de dicho pagaré junto con otros más, Pedro J. Mombille pagó la suma de $138.23, y que todos dichos pagarés, con excepción del último, han sido endosados y traspasados por The United Porto Rican Bank a The National City Bank, etc. En el hecho segundo de esta escritura se dice lo siguiente: Que en cuanto a dichas plantaciones de caña los comparecientes don Pedro J. Mombille, por sí y como tutor de su esposa doña María Jesús Vázquez, y The United Porto Rican Bank, representado por

su Vice Presidente don Fernando Margarida, mediante documento privado de fecha 12 de diciembre de 1930, reconocido por *affidavit* número 7443, ante el notario don Joaquín Vendrell Joubert, celebraron cierto contrato de refacción agrícola por virtud del cual don Pedro J. Mombille constituyó un gravamen refaccionario sobre las referidas plantaciones de cañas para garantizar el pago de los siguientes pagarés expedidos a la orden de The United Porto Rican Bank por el compareciente don Pedro J. Mombille, de acuerdo con los términos de dicho contrato de refacción, etc. Y entonces se relacionan los pagarés otorgados y entre ellos se encuentra el 186 de julio primero de 1932, por \$14,504.95. Se admite, además, en relación con la admisión del pagaré, la escritura de referencia que ya está identificada, debiendo marcarse por el Secretario como los *exhibits* dos y tres de la demandante.''

Basta la mera exposición de lo ocurrido para concluir que no se cometieron los errores que estudiamos.

La prueba era congruente con lo alegado en la demanda. No era necesario para presentarla, la alegación de una agencia. A ese efecto se dice en Bancroft's *Code Pleading,* vol. 2, pág. 1177, sección 821:

''Una alegación de actos llevados a efecto o de información obtenida por el principal se establece satisfactoriamente mediante prueba de tales actos o información por parte del agente, y en una demanda es innecesario alegar el mandato (agency). Así, en una acción por o contra un principal, basada en un contrato otorgado por su agente es correcto alegar que el contrato fué otorgado por el principal sin mencionar el mandato; o, expresado de distinta manera, una alegación de que un contrato fué otorgado o un acto llevado a cabo por determinada persona, puede ser sostenida por prueba al efecto de que fué otorgado o hecho por ella a través de su agente autorizado.''

En uno de los casos citados por el tratadista, resuelto por la Corte Suprema de los Estados Unidos desde hace un siglo, *Bank of the Metropolis* v. *Guttschlick,* 14 Pet. 19, 39 U. S. 19, 27, 10 L. Ed. 335, se decidió:

''La segunda objeción levantada se refiere a la primera causa de acción, esto es, que el acuerdo sobre el cual se demanda, se alega fué hecho por el banco 'a través del presidente y el cajero', sin alegarse que éstos estuviesen autorizados por el banco para ello. Consi-

deramos esta objeción totalmente insostenible. La alegación en esta causa de acción es que el banco, por medio de estos oficiales, acordó vender el solar. Ahora bien, aun asumiendo, a los efectos de darle a la objeción su mayor fuerza, que el tomar este acuerdo no fuera de la competencia de estos oficiales, como tales, sin embargo estaba, sin lugar a dudas, dentro de las facultades del banco el autorizar a sus propios oficiales para hacer tal cosa. Cuando por tanto, se alega que el banco por medio de ellos tomó el acuerdo, esta alegación expresa en efecto la misma cosa cuya supuesta omisión es la base de la objeción; porque bajo la asunción expresada, el banco no podía tomar otros acuerdos que los tomados por sus agentes con autoridad legal para ello. De lo contrario, habría sido suficiente en nuestra opinión, que el banco tomara el acuerdo, sin las palabras 'por medio del presidente y el cajero'; ya que es una regla en materia de alegaciones el que los hechos pueden alegarse de acuerdo con su efecto legal. Ahora bien, el efecto legal de un acuerdo tomado por un agente actuando por su principal, mientras el agente actúe dentro del radio del mandato, es que es éste un acuerdo tomado por el principal. De conformidad, está resuelto que la alegación de que una parte hizo, aceptó, endosó o entregó una letra de cambio es suficiente aun cuando el demandado no hiciera en realidad ninguno de estos actos él mismo, siempre que él hubiera autorizado que otro los hiciera. Chitty *on Bills* 356, y autoridades allí citadas.''

Cualquier duda que pudiera existir respecto a la obligación contraída por el demandado a virtud del pagaré queda despejada por la escritura que contiene una ratificación de dicha obligación por el propio demandado, cuyo efecto es el de hacer el hecho ratificado valedero desde el momento en que se realizó como si el mismo hubiera sido debidamente autorizado.

''De acuerdo con la máxima *Omnis ratihabitio retrotrahitur et mandato priori aequiparatur*—toda ratificación se retrotrae y es equivalente a anterior autoridad—es regla bien establecida, sujeta a determinadas excepciones, la que establece que una ratificación se retrotrae al tiempo cuando se llevó a efecto el acto no autorizado, y hace éste tan efectivo desde esa fecha como si se hubiese autorizado originalmente y que por tanto al ratificar, las partes se colocan para todos los fines y propósitos en la misma situación, en relación con los derechos y responsabilidades que surgen de dicho acto, de que si la persona que asumió actuar como agente hubiese actuado con auto-

ridad previamente concedida, y en algunas jurisdicciones esta regla se halla expresamente prescrita por estatuto. Una ratificación válida crea o establece una relación de agencia respecto a una materia en relación con la cual ninguna existía antes, y convierte en válido y obligatorio el acto o contrato no autorizado que antes era ineficaz. Opera no meramente como evidencia presuntiva de autoridad previa si que también *per se* como una confirmación del acto de un agente." 2 C. J. 516.

█ El tercer error señalado o sea el relativo a la moción de *nonsuit* se basa en que la moción debió haberse declarado con lugar ya que la demandante no alegó ni probó que fuera tenedora de los pagarés de buena fe por causa onerosa. No fué cometido.

No era necesario alegar que la demandante era la dueña del pagaré objeto de la acción. Bastaba con que se alegara, como se alegó, que el pagaré era uno a la orden y que la demandante era la tenedora del mismo por endoso y entrega. Dichas alegaciones, unidas a las otras que la demanda contiene, son suficientes para determinar la causa de acción ejercitada. Véanse *Schlüter & Co.* v. *González,* 34 D.P.R. 303, *Banco de P. R., Liq.* v. *Portela,* 46 D.P.R. 108 y *The National City Bank* v. *Sucn. Echevarría,* 50 D.P.R. 865.

Tampoco era necesario alegar que la demandante era tenedora de buena fe y la causa onerosa del traspaso. Todo lo que dice el artículo 404 del Código de Comercio, ed. 1932, 52 de la Ley Uniforme de Instrumentos Negociables, Leyes de 1930, pág. 191, es:

"El tenedor de un documento negociable puede ejercitar acciones judiciales fundadas en el mismo, en su propio nombre, y el pago que a él se hiciere dentro del debido procedimiento de ley, cancelará el documento."

Y la jurisprudencia ha resuelto que:

"Toda vez que un pagaré lleva consigo una causa (consideration), no es menester alegar ésta." *Winters* v. *Rush,* 34 Cal. 136.

"En acción en cobro de pagaré, no es necesario alegar o probar la existencia de causa (consideration)." *Hual de Ranch Co.* v. *Beebe,* 3 C. A. (2d) 592, 40 P. (2d) 545.

Es cierto que el artículo siguiente del Código de Comercio, el 405, o sea el 53 de la Ley Uniforme de Instrumentos Negociables, Leyes de 1930, pág. 73, lee:

"Artículo 405.—Tenedor de buena fe es el que ha tomado el documento con arreglo a las siguientes circunstancias:

"1. Que esté completo y sea regular en su apariencia;

"2. Que se convirtió en tenedor del mismo antes de estar vencido, y sin tener conocimiento de que su aceptación o pago había sido rehusado previamente, si ése fuere el caso;

"3. Que lo tomó de buena fe y por causa onerosa;

"4. Que cuando le fué negociado no tenía conocimiento de defecto alguno en el documento, o en el derecho de la persona que lo negoció."

Pero ello no quiere decir que haya que alegar en la demanda *todos* los elementos constitutivos de la buena fe. La buena fe del tenedor se presume de la tenencia misma. Y en cuanto a la prueba, basta la presentación del documento como aquí se hizo quedando en los autos en poder de la corte bajo la custodia del secretario de la misma. Al examinarlo, pudo la corte cerciorarse de si estaba completo y era regular en su apariencia y a falta de alegación y prueba en contrario pudo presumir que el tenedor lo tomó de buena fe y por causa onerosa antes de estar vencido y que cuando le fué negociado no tenía conocimiento de defecto alguno en el documento mismo o en el derecho de la persona que lo negoció.

Si del documento mismo o por algún otro medio de prueba constase que el demandante se convirtió en tenedor del documento después de estar vencido, faltaría uno de los requisitos de la buena fe y eso no obstante podría demandar, sujeto desde luego a las defensas que el deudor tuviese contra los dueños originales de la obligación. Ninguna de esas defensas fué establecida en este caso, ni se aportó dato alguno que tendiera a destruir la presunción de buena fe del tenedor.

■ Tampoco existe el quinto de los errores señalados. Algunos de los argumentos que presenta el apelante para

sostener dicho error han sido tomados en consideración y resueltos en sentido contrario al discutir los señalamientos anteriores. Nos limitaremos pues a los que no han sido considerados, como los relativos a la fecha del endoso, al alcance de cierta certificación que aparece al dorso del pagaré número 186 y al de otra que introdujo en evidencia el demandado.

En cuanto a la fecha del endoso bastará decir que el artículo 464 del Código de Enjuiciamiento Civil, ed. 1933, establece en su número 22 como una presunción controvertible que el endoso de un pagaré o giro negociable, se hizo en la fecha y lugar en que fué extendido dicho pagaré o giro, y que nada alegó ni probó el demandado tendiente a destruir esa presunción.

Además aunque no se hubiera probado la fecha del endoso, entonces, considerada la demandante como agente para el cobro, habría que reconocerle siempre su derecho a demandar. *Domenech* v. *Suau, Fiol & Co.*, 49 D.P.R. 755.

La certificación constante en el pagaré invocada por el apelante es así:

"*Certifico:* que los gravámenes refaccionarios e hipotecarios constituídos por el documento privado de fecha 12 de diciembre de 1930, reconocido mediante *affidavit* núm. 7443 ante el Notario Joaquín Vendrell y por el documento privado de fecha 16 de diciembre de 1929, reconocido mediante *affidavit* núm. 6864 ante el Notario Joaquín Vendrell, según quedó ampliado respectivamente, han quedado cancelados mediante la escritura núm. 12 de esta misma fecha ante mí. Caguas, P. R., 3 de abril de 1934. (Fdo.) Walter L. Newsom, Jr., Notario Público."

Después de transcribirla en su alegato el apelante se pregunta: "Si los gravámenes provenientes del contrato de refacción agrícola incluyendo los pagarés han quedado cancelados según la prueba del demandante, ¿cómo puede intentarse el cobro de un pagaré ya cancelado?"

Esa pregunta parte de un hecho, el de la cancelación de los pagarés, que no encuentra apoyo en la escritura. De ésta

se desprende que la cancelación del gravamen refaccionario se efectuó para traspasar a don Enrique Aponte las plantaciones de caña propiedad originalmente del demandado, habiéndose recibido el importe de dicha venta para abonar a los pagarés refaccionarios que tenía en su poder. La cancelación de una garantía no lleva consigo la de la deuda garantizada. Puede el acreedor en cualquier momento desprenderse de los bienes que aseguran su crédito sin perder éste. Por la escritura número 12, por mutuo acuerdo de las partes interesadas, se canceló la garantía refaccionaria, pero la obligación garantizada quedó en toda su fuerza y vigor.

La otra certificación, la presentada por el propio demandado apelante, guarda relación con cierto pleito iniciado en la corte federal al que se refirió también en su declaración el testigo Isidro Quiñones. Resolviendo la cuestión que en esa forma se le planteara, después de esclarecerla y citar la jurisprudencia que consideró pertinente, dijo la corte sentenciadora en su relación del caso y opinión:

"El hecho de que este pagaré pueda ser adjudicado a una tercera persona en el pleito ante la corte federal, no debe preocupar al demandado. En tal caso, si la demandante en esta acción ha cobrado el importe del mismo, ella será responsable al tercero del precio que éste haya pagado por dicho pagaré. Lo único que podría preocupar al demandado es que se le cobrara dicho pagaré por segunda vez, lo cual no es posible que suceda ya que de acuerdo con el Artículo 404 del Código de Comercio, tantas veces mencionado, el pago que se hiciere a la demandante dentro de este pleito cancelará el documento."

Y ello es bastante.

*Por virtud de todo lo expuesto debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

El Juez Asociado Sr. Todd, Jr., no intervino.