CAGUAS COMPANY, INC., demandante y apelada, *v.* ALEJANDRO LÓPEZ FAUCT, demandado y apelante.

Núm. 8133.—*Sometido:* Mayo 9, 1941. *Resuelto:* Julio 23, 1941.

*Mimoso, Vendrell & Mimoso* y *Rafael Soltero Peralta,* abogados del apelante; *Fiddler, McConnell & González* y *Ema Luz Cardona,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Caguas Company, Inc., corporación organizada de acuerdo con las leyes del Estado de Maryland, demandó en la Corte de Distrito de San Juan a Alejandro López Fauct en cobro de un pagaré por $26,482.11, suscrito por el demandado el día 10 de diciembre de 1931 a la orden de The United Porto Rican Bank, a vencer el 30 de junio de 1932, con intereses al 9 por ciento anual desde su vencimiento, pagaré que a virtud de pagos parciales quedó reducido a la suma de $24,034.33. Se alega en la demanda que United Porto Rican Bank endosó y entregó el pagaré a The National City Bank of New York, quien lo endosó y entregó a la East Porto Rican Sugar Company, quien a su vez lo endosó y entregó a la demandante

que es hoy su dueña, no habiendo sido pagado por el demandado. A petición de éste el caso fué trasladado a la Corte de Distrito de Humacao.

En su contestación el demandado negó sustancialmente los hechos alegados en la demanda y como defensas especiales, en síntesis, alegó lo siguiente:

"1.—Que la demandante no está autorizada para hacer negocios en Puerto Rico.

"2.—Que el pagaré es uno de varios garantizados por gravamen refaccionario según los términos de un contrato otorgado por el demandado y United Porto Rican Bank comprensivo de las zafras del 1932 al 1935, y que no apareciendo que el contrato refaccionario fuera cedido a la demandante, ésta no está en posición de exigir el pago del pagaré.

"3.—Que el demandado se vió imposibilitado de solventar el pagaré por cuanto perdió las cañas refaccionadas, y por él sembradas en terrenos arrendádosle por la United Porto Rican Sugar Company (of Porto Rico), de la cual corporación se alega era subsidiaria The United Porto Rican Bank, por la razón de que, estando la primera insolvente, el síndico de la misma rescindió el arrendamiento, viéndose el demandado obligado a abandonar sus cosechas, y habiendo entonces el United Porto Rican Bank suspendido los adelantos refaccionarios estipulados en el contrato a que ya se ha hecho referencia."

Celebrado el juicio correspondiente la corte inferior declaró con lugar la demanda y de esa sentencia apela el demandado alegando que la corte inferior cometió siete errores, a saber, primero, al interpretar el artículo 401 del Código de Comercio; segundo, al interpretar los artículos 37 y 38 de la Ley de Corporaciones Privadas; tercero, al interpretar el artículo 410 del Código de Comercio; cuarto, al interpretar el artículo 405 del mismo código; quinto, al apreciar la prueba; sexto, al apreciar la prueba perjudicando los derechos del apelante, y séptimo, al condenar al demandado al pago de las costas, desembolsos y honorarios de abogado.

Comenzaremos por resolver el segundo señalamiento de error, o sea el que se refiere a la interpretación de los

artículos 37 y 38 de la Ley de Corporaciones Privadas de marzo 9, 1911, a virtud de la cual se desestimó la primera defensa del demandado al efecto de que la demandante no tiene capacidad para iniciar este litigio. Esta misma cuestión fué planteada y resuelta a favor de la demandante en el reciente caso de *Caguas Company, Inc.* v. *Mombille,* 58 D.P.R. 300. Al igual que en dicho caso en el de autos se probó que los negocios de la demandante consistieron en haber adquirido, entre otros, el pagaré objeto de esta acción y que dicha transacción según la declaración del testigo del propio demandado, Isidro Quiñones, empleado de la demandante, ocurrió en los Estados Unidos. A la página 116 de la transcripción de evidencia aparece dicho testigo declarando lo siguiente:

"¿Cuándo fué que adquirió la Caguas Company, Inc., los préstamos o la responsabilidad del pago de esos préstamos que le hizo el National City Bank al United Porto Rican Bank?

"R.—Yo no sé exactamente la fecha en que lo adquirió, *porque son operaciones que se hacían en el Norte.*" (Itálicas nuestras.)

No hay prueba alguna que tienda a demostrar que la demandante celebrara contratos en Puerto Rico y se admitió que la demandante no cumplió con las formalidades legales que exigen los artículos 37 y 38 de la Ley de Corporaciones Privadas para poder hacer negocios en Puerto Rico, pero ya se resolvió en el caso de *Caguas Company, Inc.* v. *Mombille,* supra, ratificando jurisprudencia anterior de este tribunal, y citamos del resumen:

"Una corporación extranjera que no haga negocios en la isla tiene capacidad para demandar en nuestros tribunales en cobro de pagarés de los cuales sea tenedora. Su mera tenencia de los pagarés, sin más, no quiere decir que haga negocios aquí a los efectos de venir obligada a cumplir con el deber que le impone el artículo 38 de la Ley de Corporaciones Privadas de 1911, enmendado por la núm. 31 de 1916 (pág. 83), como condición precedente a su derecho a demandar."

No existe el error.

■■ El artículo 401 del Código de Comercio, que se dice en el primer error que fué mal interpretado por la corte inferior, es el artículo 49 de la Ley Uniforme de Instrumentos Negociables aprobada en el año 1930 (Ley núm. 17 de 1930, pág. 173) y dice así:

"El tenedor de un documento puede tachar en cualquier momento todo endoso que no sea necesario a su derecho. Los endosantes cuyos endosos sean tachados, y todos los subsiguientes quedan por ese hecho relevados de responsabilidad por el documento."

El pagaré objeto de la reclamación en este caso fué endosado por varias entidades que en distintas épocas fueron tenedoras de dicha obligación. Aparece, sin embargo, que el primer endoso hecho por The United Porto Rican Bank, por su *Comptroller* M. B. Manwaring, fué un endoso en blanco, es decir, no mencionaba endosatario alguno y, por tanto, era pagadero al portador y negociable mediante entrega. (Artículo 387 Código de Comercio, artículo 35 Ley 17 de 1930.)

Habiéndose probado que la demandante era la tenedora de dicho pagaré, la corte inferior, aplicando el artículo 401, supra, resolvió que no era necesario discutir o tomar en consideración, no obstante haberse probado su regularidad, los endosos posteriores al primero hecho en blanco. Sostiene el apelante que el error consiste en que al disponer dicho artículo que el tenedor de un documento puede "tachar" todo endoso que no sea necesario a su derecho esto tiene que hacerse "físicamente" en el documento, pasando una raya por encima de los endosos subsiguientes al endoso en blanco, cosa que no se hizo en el caso de autos. No creemos que deba interpretarse tan técnicamente el precepto citado.

En el caso de *Parker* v. *Roberts*, 243 Mass. 174, 137 N. E. 295, se presentó una situación parecida. Se expidió un pagaré a la orden y el tomador (*payee*) lo endosó en blanco antes de su vencimiento. Posteriormente fué endosado el documento dos veces, siendo dichos endosos especiales. El

último de éstos fué cancelado con un sello de goma pero no así el primer endoso especial a favor del Corn Exchange National Bank. No hubo prueba de cómo llegó el demandante a ser el tenedor del pagaré pero la Corte Suprema de Massachusetts aplicando el artículo 49 de la Ley Uniforme de Instrumentos Negociables, artículo 401, supra, resolvió lo siguiente:

"El derecho del demandante a omitir el tener que trazar su título...a través de todos los endosantes subsiguientes y alegar que es el tenedor bajo el previo endoso en blanco le está conferido por el estatuto. (Citas) El pagaré por lo tanto será transferible, por la entrega y para todos los fines sería un pagaré al portador (citas)."

Se resolvió ésto, a pesar de que en la opinión se hace constar que, aparentemente de la faz del pagaré el título al mismo permanecía en el primer endosante especial, el Corn Exchange National Bank, ya que según dijo la corte "el tenedor de un pagaré que ha sido endosado en blanco se presume ser un tenedor de buena fe."

En el caso de autos, habiéndose probado por la demandante que The United Porto Rican Bank endosó en blanco el pagaré librado por el demandado y que la demandante era la tenedora del mismo, tenía derecho a reclamar su importe, eliminando así de hecho, aunque no lo hiciera físicamente en el documento, los endosos especiales posteriores. Lo que el artículo 401, supra, autoriza en efecto, es que se elimine la necesidad de tener que trazar la cadena de títulos a través de los distintos endosos especiales y que el tenedor de buena fe del pagaré pueda establecer su título al mismo a base del endoso en blanco. Exigir que se tache físicamente todo endoso posterior sería dar más importancia a la forma que a la substancia del derecho concedido por la ley. No debemos olvidar, además, que este artículo que interpretamos lo que hace es relevar a los endosantes posteriores de responsabilidad en el pagaré y no afecta para nada la que pueda tener el demandado como librador del mismo.

 Por los señalamientos tercero y cuarto se alega que la corte inferior cometió error de derecho al interpretar los artículos 410 y 405 del Código de Comercio. Estos artículos disponen:

"Artículo 410.—(Artículo 59, Ley Núm. 17 de 1930, pág. 173.)— Todo tenedor de buena fe posee el documento libre de defectos en el título de propiedad de las partes que le hayan precedido, y sin responsabilidad en cuanto a las alegaciones que, en su defensa, pudieran utilizar esas mismas partes entre sí, y podrá exigir el pago del importe total del documento a todas las partes responsables de dicho pago."

"Artículo 405.—(Artículo 53, Ley Núm. 17 de 1930, pág. 173.)— Tenedor de buena fe es el que ha tomado el documento con arreglo a las siguientes circunstancias:

"1. Que esté completo y sea regular en su apariencia;

"2. Que se convirtió en tenedor del mismo antes de estar vencido, y sin tener conocimiento de que su aceptación o pago había sido rehusado previamente, si ése fuere el caso;

"3. Que lo tomó de buena fe y por causa onerosa;

"4. Que cuando le fué negociado no tenía conocimiento de defecto alguno en el documento, o en el derecho de la persona que lo negoció."

En la opinión dictada por la corte inferior en apoyo de la sentencia se exponen ampliamente las conclusiones de hecho y de derecho a que llegó, de acuerdo con la prueba, en esta forma:

"La segunda defensa del demandado es que, habiéndose garantizado el pagaré por gravamen refaccionario, el pagaré no podía ser trasmitido válidamente a la demandante sin la cesión del contrato de refacción mediante el cual se garantizaba su pago. Esta defensa carece por completo de mérito. Equivale a sostener que no puede cederse un crédito sin que se cedan expresamente los derechos accesorios del mismo. El artículo 1418 del Código Civil, edición del 1930, expresamente dispone que la cesión de un crédito comprende la de todos los derechos accesorios, y en el caso de *Crédito y Ahorro Ponceño* v. *Gorbia*, 25 F. (2d) 817 se resolvió que un pagaré garantizado con gravamen refaccionario podía ser trasmitido válidamente sin que se cediera expresamente el contrato de refacción.

"El demandado alega además como defensa que el síndico de la United Porto Rican Sugar Company (of Porto Rico) rescindió el

contrato de subarrendamiento a base del cual el demandado poseía los terrenos sembrados y las cañas refaccionadas por el United Porto Rican Bank, y que al perder el demandado sus cañas el United Porto Rican Bank cesó de refaccionarlos. Asumiendo que las relaciones entre la United Porto Rican Sugar Company (of Porto Rico) y el United Porto Rican Bank, fueran tales que los actos de la primera perjudicaran u obligaran al segundo, y aun asumiendo que el demandado pudiera interponer contra la aquí demandante las defensas que pudiera tener contra la United Porto Rican Bank, no se presentó prueba alguna que indicara que estuviese injustificada la rescisión de dicho subarrendamiento y la prueba por el contrario indica que la rescisión obedeció a actos de incumplimiento por parte del demandado.

"Pero es que el demandado no puede interponer contra la demandante las defensas que pudiera tener contra el United Porto Rican Bank, aun cuando existieran tales defensas. Se trata, como hemos dicho, de un pagaré negociable. El artículo 410 del Código de Comercio dispone que el tenedor de buena fe de un documento negociable posee el mismo libre de las defensas que pudieran existir contra las partes que le hayan precedido en la tenencia del documento. El artículo 411 dispone que un tenedor que derive sus derechos de los de un tenedor de buena fe, y que no haya sido parte en fraude o ilegalidad que afecte al documento, tendrá todos los derechos de dicho tenedor anterior. Por consiguiente, si la demandante, o cualquiera de los tenedores anteriores del pagaré, excepto el United Porto Rican Bank es, o fué, tenedor de buena fe, las defensas que pudiera tener el demandado contra el United Porto Rican Bank no pueden prosperar.

"Según el artículo 405 del Código de Comercio, es tenedor de buena fe el que ha tomado el documento antes de su vencimiento, de buena fe, por causa onerosa, sin tener conocimiento de defecto alguno en el documento, o en el derecho de la persona de quien lo adquirió, y siempre y cuando el documento esté completo y sea regular en su apariencia. En el caso de autos el documento es completo y regular en apariencia. De la prueba no aparece si la primera negociación a The National City Bank of New York se verificó antes o después del vencimiento del pagaré, y en ausencia de tal prueba, hay que presumir, de acuerdo con las disposiciones expresas del artículo 398, que se verificó antes del vencimiento. También hay que presumir, de acuerdo con el artículo 377, que The National City Bank of New York lo adquirió por causa onerosa, y la prueba demuestra que lo

adquirió en prenda, lo que constituye causa onerosa de acuerdo con el artículo 380 del Código citado. En cuanto a la buena fe y ausencia de conocimiento de defecto o defensa alguna, la prueba demuestra que The National City Bank of New York adquirió el pagaré, junto con muchos otros, en el curso ordinario de los negocios, y nada hay que demuestre que dicho banco, ni ninguno de los adquirentes posteriores del documento tuviese conocimiento de defecto o defensa alguno, aparte de que el demandado no alegó que ni la demandante ni ninguno de los tenedores anteriores, excepto el United Porto Rican Bank, tuviese conocimiento de las defensas interpuestas, algunas de las cuales se basan en hechos que ocurrieron después del vencimiento del pagaré, o sea, después que el pagaré había sido negociado por primera vez a The National City Bank of New York. Es evidente, pues, que aunque la demandante no es tenedora de buena fe, por haber adquirido el pagaré después de su vencimiento, tiene todos los derechos de un tenedor de buena fe, ya que su antecesor en el título del pagaré, o sea The National City Bank of New York, fué tenedor de buena fe, y que por consiguiente, aunque el demandado tuviera defensas que alegar contra United Porto Rican Bank, no puede interponerlas contra la demandante.''

La contención principal del apelante es que el pagaré está sujeto al contrato de refacción a que hace referencia y que la demandante no es tenedora de buena fe del pagaré porque el mismo lo tiene en prenda el National City Bank. En cuanto a esto último, la prueba demuestra que si bien dicho banco tomó el pagaré en prenda, la demandante lo adquirió, con otros, en 25 de febrero de 1938 en subasta celebrada en la Corte de los Estados Unidos para Puerto Rico, en el caso en equidad Núm. 2287 entablado por la Caguas Company, Inc. en contra de The United Porto Rican Bank. De ahí que, con permiso de la corte inferior, la demanda se enmendó para conformarla con la prueba, en el sentido de alegarse que la demandante era tenedora del pagaré y no su dueña a la fecha en que se inició esta acción en el año 1935. Lo que se desprende de la declaración del Sr. Rafael García Cabrera, Gerente del National City Bank en Caguas, es que dicho banco tuvo el pagaré en prenda pero que para la fecha en que se celebró el juicio en este caso en el año 1939 estaba

en poder de los abogados de la demandante, y que si se envió al Banco fué para que el abogado del demandado pudiera examinarlo.

En cuanto a que no puede exigirse el pago del pagaré por estar subordinado al contrato de refacción, la ley y la jurisprudencia sostienen lo contrario. El artículo 1418 del Código Civil (Ed. 1930) dispone que "la venta o cesión de un crédito comprende la de todos los derechos accesorios, como la fianza, hipoteca, prenda o privilegio." En el mismo pagaré se hizo constar lo siguiente:

"...Este pagaré es uno de los pagarés a que se refiere el contrato de refacción agrícola celebrado entre el Banco y los infrascritos el día 16 de diciembre de 1930, por ante el Notario Joaquín Vendrell, según *affidavit* número 7446, debidamente registrado, y, junto con los demás pagarés emitidos o que se emitieren en el futuro de acuerdo con dicho contrato, está garantizado por el gravamen creado por el mismo. *Nada de lo contenido en el presente se interpretará que limita en manera alguna la obligación absoluta de los infrascritos y de cada uno de ellos de pagar este pagaré en la fecha de su vencimiento o en la fecha de vencimiento de cualquiera prórroga del mismo.*"

En el caso de *Crédito & Ahorro Ponceño* v. *Gorbia,* 25 F. (2d) 817, aplicando el artículo 1418, supra, se resolvió que si los pagarés de unos colonos estaban garantizados con el tabaco objeto de la refacción, el mismo pasaba a la posesión del banco al adquirir éste los pagarés.

Es más, aun cuando la garantía refaccionaria hubiera sido cancelada, eso de por sí no conlleva la cancelación de la deuda garantizada, según se resolvió en el caso de *Caguas Company, Inc.* v. *Mombille,* supra, donde se dijo:

"La cancelación de una garantía no lleva consigo la de la deuda garantizada. Puede el acreedor en cualquier momento desprenderse de los bienes que aseguran su crédito sin perder éste."

Además, por los propios términos del pagaré ya hemos visto que el demandado se obligó a satisfacerlo a su vencimiento sin limitación alguna.

■ Es cierto que la demandante al adquirir el pagaré después de vencido no era una tenedora de buena fe pero la corte inferior aplicó correctamente el artículo 411 del Código de Comercio que dispone que:

"Artículo 411.—(Artículo 59, Ley Núm. 17 de 1930, pág. 173.)— En manos de un tenedor que no sea tenedor de buena fe, el documento negociable está sujeto a la misma materia de defensa que el documento que no fuere negociable. *Pero un tenedor que derive su derecho del de un tenedor de buena fe,* y que no haya sido parte en fraude o ilegalidad alguna que afecte al documento, *tendrá* todos los derechos de dicho tenedor anterior en lo que respecta a todas las partes que hayan precedido al último." (Itálicas nuestras.)

Los artículos 410 y 411 supra, (artículos 58 y 59 de la Ley Uniforme de Instrumentos Negociables) han sido objeto de interpretación liberal por las cortes americanas. En 8 Am. Jur. 116, se expone la regla así:

"La regla que protege a uno que ha adquirido un instrumento negociable de un tenedor de buena fe, como si fuera él mismo un tenedor de esa índole, es aplicable aunque no haya pagado por el instrumento, como cuando se le transfiere para traer una acción en el estado en que reside. Es aplicable también aunque tuviera conocimiento de algún defecto en el instrumento. La mayoría de las autoridades sostienen que la regla es aplicable, aunque se adquiera el instrumento después de su vencimiento."

Aplicando esta regla en el caso de *Eames* v. *Crosier,* 101 Cal. 260, 35 P. 873 se dijo lo siguiente:

"Es una regla ya establecida que si la parte que traspasó el instrumento adquirió el pagaré a título oneroso, y antes de su vencimiento, libre de defecto alguno, su nuevo dueño adquirió tan buen título como tenía su antecesor en derecho, *aunque haya adquirido el pagaré cuando ya estaba vencido.*"

Véase además la anotación en 98 A.L.R. 291.

■ Somos de opinión que los demás errores alegados, que se refieren a la apreciación que de la prueba hizo la corte inferior, no imputándosele pasión, prejuicio o parcialidad, carecen de mérito pues las conclusiones a que llegó están

sostenidas por la prueba presentada. Se probó que el demandado expidió el pagaré el que de su faz aparece ser negociable; que fué endosado en blanco; que la demandante, cuando se inició la acción era tenedora del mismo, y más tarde su dueña y que el demandado no lo ha satisfecho.

■ En cuanto a la condena de $500 como honorarios de abogado, somos de opinión que, considerando todas las circunstancias concurrentes no debemos intervenir con la discreción de la corte inferior al considerar la temeridad del demandado.

*Se confirma la sentencia apelada.*